STATE of Iowa, Appellee,

v.

Kevin Todd BISHOP, Appellant.

No. 85–94.

Supreme Court of Iowa.

May 21, 1986.

Rehearing Denied June 13, 1986.

Philip Miller, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and Charles Neighbor, Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, SCHULTZ, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

Defendant, Kevin Todd Bishop, appeals from judgment entered after a jury trial for delivery of a controlled substance (cocaine), and for possession of cocaine and marijuana. *See* Iowa Code § 204.401(1), (3) (1983). We affirm.

Based on the evidence adduced at trial, the jury could have found the following facts. In June 1984 the Newton police department (department) began a local undercover drug trafficking operation, headed by Sergeant Jerry Diamond. Tim Menke, an informant experienced in undercover drug operations, worked with Diamond. The department provided Menke with an apartment and paid him $175 per week. He also was reimbursed for mileage and expenses. These expenses amounted to twenty-five dollars a week in the operation's early stages and included money paid for cover charges or for drinks in bars or lounges that were suspected of drug-related activities.

Menke kept in daily contact with Diamond and also made typewritten reports of his activities. August 6, 1984, based on information received from Menke, Diamond obtained a warrant to search the defendant and Oscar's Lounge in Newton, a bar where defendant worked. The next day, before the warrant was executed, Menke went into Oscar's Lounge when defendant was working. At that time Menke purchased from defendant one-half gram of cocaine with three marked twenty-dollar bills. Menke immediately contacted Diamond and turned over the purchased cocaine. The latter then reapplied for a search warrant with the additional information of a drug purchase. The August 6 warrant was reissued on August 8 through a notation made on the warrant by the same judge. In addition, an arrest warrant for defendant was issued.

The Newton police executed the search warrant on August 9. They found marijuana in the office of Oscar's Lounge, but none of the marked bills. The police arrested defendant pursuant to the arrest warrant and, upon searching him, recovered a vial containing cocaine, and a straw containing traces of cocaine.

A trial information was filed charging defendant in separate counts with the above-controlled substance violations. Trial court denied defendant's motion to suppress the evidence seized through execution of the warrants. Defendant then filed a motion in limine to exclude potential hearsay evidence contained in the State's pretrial minutes of testimony. Trial court made no general ruling on this broad motion, but instead made specific rulings on expected testimony, after counsel's arguments in chambers.

Upon trial the jury returned guilty verdicts on all three counts. The court denied defendant's motions in arrest of judgment and for new trial, and he was sentenced to three concurrent terms of imprisonment.

In this appeal defendant asserts trial court committed errors in various rulings, and his constitutional rights were violated by the prosecutor's misconduct. We address these contentions in the divisions that follow.

### I. *Search and seizure issue.*

On August 8, two days after the first unexecuted search warrant was issued, Diamond reapplied to the same judge for a warrant. This application included an additional sheet detailing Menke's activities and the information he had provided, and a background statement indicating the informant previously had given reliable information. Diamond also testified about the August 7 drug purchase. The judge "reissued" the warrant based on all this information. He wrote:

> 8-8-84. This information reexamined in light of the complaint against Kevin Todd Bishop [for delivery of a controlled substance] made this day; and the search warrant is reissued, based upon the added information also. A copy of the complaint to be attached to this.

Defendant asserts trial court erred in overruling his motion to suppress evidence seized in execution of the August 8 search warrant because it was not supported by probable cause. He argues his rights under the United States and Iowa Constitutions were violated by admission of the evidence at trial. *See* U.S. Const. amend. IV, XIV; Iowa Const. art. I, § 8. We have noted the search and seizure provisions of the United States and Iowa Constitutions contain identical language. *State v. Groff,* 323 N.W.2d 204, 207 (Iowa 1982). Consequently, they generally are "deemed to be identical in scope, import, and purpose." *Id.*

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court rejected the former two-pronged test for determining probable cause, established in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), in favor of a totality of the circumstances analysis. 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *see Massachusetts v. Upton,* 466 U.S. 727, 732, 104 S.Ct. 2085, 2087–88, 80 L.Ed.2d 721, 726–27 (1984); *State v. Bousman,* 387 N.W.2d 605, 610 (Iowa 1986); *State v. Luter,* 346 N.W.2d 802, 807–08 (Iowa), *cert. denied,* — U.S. —, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984). Under *Gates,*

> [t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708 (1960)).

The informant's veracity and basis of knowledge are no longer separate and distinct considerations. A deficiency in one of these factors will not necessarily invalidate the warrant for lack of probable cause. Rather, these factors are considered as part of the totality of circumstances, and a strong showing in one factor may compensate for the deficiency in another factor.[1] *Gates,* 462 U.S. at 233, 103

---

1. Defendant asserts some of the incidents detailed in the statement of facts contain double hearsay. He argues the statement was deficient because it did not detail the basis of knowledge nor veracity of the declarant who spoke to the police informant. The defendant's argument erroneously focuses on the two-pronged test. Under the *Gates* standard, the judge views all the

S.Ct. at 2329, 76 L.Ed.2d at 545; *Luter,* 346 N.W.2d at 807–08. Further, even seemingly innocent activities may become suspicious when viewed in light of all the circumstances, and may help provide the basis for probable cause. *Gates,* 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13, 76 L.Ed.2d at 552 n. 13.

 Because warrants are preferred, we resolve all doubts in favor of their validity. *State v. Hennon,* 314 N.W.2d 405, 407 (Iowa 1982); *see also Upton,* 466 U.S. at 733–34, 104 S.Ct. at 2088–89, 80 L.Ed.2d at 727–28. We do not make our own independent determination of probable cause. Rather, we give great deference to the prior determination of probable cause by a judge or magistrate. *Christenson v. Ramaeker,* 366 N.W.2d 905, 908 (Iowa 1985). Our inquiry is whether the magistrate or judge had a " 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (quoting *Jones,* 362 U.S. at 271, 80 S.Ct. at 736, 4 L.Ed.2d at 708).

 Under the totality of the circumstances, we find the judge had a substantial basis for concluding probable cause existed to support the issuance of the August 8 warrant.[2]

Trial court properly overruled defendant's motion to suppress.

## II. *Failure to produce exculpatory evidence.*

 During trial defendant subpoenaed all police payment records relating to Menke. When defendant called Diamond the next day as a hostile witness, he was unable to produce most of the records. In chambers, defendant asked that the case be continued until the records were produced or be dismissed. Trial court found defendant was entitled to the information and continued the case for one more day, at which time the records were produced. Defendant used the records in his direct examination of Diamond and Menke in an attempt to impeach the credibility of both witnesses.

Defendant asserts the prosecutor's failure to produce police records of payments at an earlier time in the trial denied defendant his right to due process, a fair trial, confrontation and cross-examination of witnesses, and adequate preparation for trial. The State responds to these assertions by arguing defendant failed to preserve error. Passing the questionable error preservation issue, however, we find defendant's argument is meritless.

Defendant made no pretrial discovery request for production of these payment receipts. Apparently, the only request came during trial. Within two days the State produced the records. Further, although disclosure came after defendant's cross-examination of Diamond and Menke, defendant was able to use these records in direct examination of both hostile witnesses.

The present case is unlike *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and *Brady v. Mary-*

---

circumstances and determines whether the information when taken as a whole is reliable and provides a basis for concluding there is a fair probability that contraband will be found at a particular place. 462 U.S. at 233, 238–39, 103 S.Ct. at 2329, 2332, 76 L.Ed.2d at 545, 548; *see United States v. Smith,* 462 F.2d 456, 460 (8th Cir.1972) ("The crucial question here, however, is not ... whether the affiant can attest to the reliability or credibility of the second individual, but whether the information furnished by the informant, taken as a whole in light of the underlying circumstances, can be said to be reliable.").

**2.** The August 6 warrant was "reissued" on August 8 based on the resubmitted warrant appli-

cation and Diamond's additional testimony detailing the August 7 drug purchase. This latter warrant was executed. While we agree with defendant that the August 8 warrant must be supported by probable cause, we are not persuaded by defendant's reliance on *Sgro v. United States,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932). In *Sgro,* a warrant was issued but not executed within the specified time as required by an applicable statute. The original warrant thus was void. Three weeks after its issuance, the judicial officer "reissued" the warrant without taking evidence or making a finding that probable cause then existed. *Id.* at 210–12, 53 S.Ct. at 140–41, 77 L.Ed. at 262–63.

land, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), cases in which material evidence was discovered only after trial and therefore was not considered by the jury. Agurs, 427 U.S. at 100–03, 96 S.Ct. at 2396–97, 49 L.Ed.2d at 348–49; Brady, 373 U.S. at 84, 83 S.Ct. at 1195, 10 L.Ed.2d at 217. Where, as here, the evidence was disclosed during trial and at a meaningful time, due process has not been denied. See State v. Folkens, 281 N.W.2d 1, 6–7 (Iowa 1979); State v. Epperson, 264 N.W.2d 753, 756 (Iowa), cert. denied, 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978); see also United States v. Kaplan, 554 F.2d 577, 580 (3d Cir.1977) ("If exculpatory evidence can be effectively presented at trial and the defendant is not prevented by lack of time to make needed investigation, there is no reversible prosecutorial conduct in ill-timed presentation."). A new trial is not mandated because it would involve only evidence already considered by the jury in this trial. State v. Love, 302 N.W.2d 115, 123 (Iowa 1981).

Although defendant now complains he had inadequate preparation time, he failed to ask for a continuance after the payment records were produced. The "exculpatory" evidence was before the jury when they made their decision. We find no reversible error.

III. *Refusal to permit impeachment through pretrial minutes of testimony.*

Defendant next contends trial court erred in not allowing him to use Diamond's pretrial minute of testimony for impeachment. Alternatively, he asserts trial court should have limited the prosecutor to the testimony contained in the minute, which stated in relevant part:

[T]hat on or about the 7th of August, 1984, Menke was working undercover at Oscar's Lounge located in Newton, Jasper County, Iowa, when he did make a buy from Kevin Todd Bishop of [one-half] gram of cocaine for $50.00; that Menke did give Bishop $60.00 in marked $20 bills ...; that Menke did turn over to [Diamond] on the 7th of August, 1984, a package which was in a pharmacy fold of Hustler magazine ... containing a substance which appeared to be cocaine and a *$10.00 bill.*

(Emphasis added.)

During trial, Diamond testified Menke gave him only the package of cocaine in the magazine fold and kept the ten dollars as part of a final settlement with the police department. In his motion for mistrial, defendant asserted Diamond should have been required to testify as set out in the pretrial minute or that defendant should have been permitted to use the pretrial minute as a prior inconsistent statement to impeach this witness. We disagree.

■ Pretrial minutes of testimony must contain a "full and fair statement of the witness' expected testimony," Iowa R.Crim.P. 5(3), but need not set out every detail of the expected testimony. They need only alert defendant to the "source and nature of the information against him." State v. Ellis, 350 N.W.2d 178, 181 (Iowa 1984). Here defendant made no timely objection that the testimony should be limited or that it had gone beyond the scope of the pretrial minute. His motion for mistrial on this ground came late in the trial. The court did not abuse its discretion by failing to grant a new trial on this ground. See State v. Trudo, 253 N.W.2d 101, 106 (Iowa), cert. denied, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977).

■ Trial court also did not err in refusing to allow the pretrial minute to be used for impeachment purposes. Certainly, "[a] witness may be impeached by showing his testimony upon a material matter is inconsistent with a prior statement made *by him.*" State v. Frommelt, 159 N.W.2d 532, 535 (Iowa 1968) (emphasis added); see Iowa R.Evid. 801(d). In some early cases, this court suggested that minutes of sworn testimony given before a grand jury might be admissible at a later trial to impeach a witness. See, e.g., State v. De Bont, 223 Iowa 721, 722–23, 273 N.W. 873, 874 (1937); State v. Huckins, 212 Iowa 283, 287, 234 N.W. 554, 557 (1931). *But see State v.*

*Hillsman,* 281 N.W.2d 114, 117–18 (Iowa 1979) (implying *Huckins* may not accurately reflect the current law).

Here, however, the pretrial minute was not Diamond's sworn statement. Moreover, he made no report to the county attorney's office detailing the recovery of the ten dollars and took no part in preparation of the pretrial minute. The pretrial minute therefore did not constitute a prior inconsistent statement and could not serve as a proper vehicle for impeachment. *Cf. Hillsman,* 281 N.W.2d at 116–17 (Mistake made by assistant county attorney in preparing the pretrial minute of testimony of a private-citizen witness shed no light on witness' credibility and pretrial minute could not be used for impeachment.).

Trial court did not abuse its discretion in refusing to admit the pretrial minute for impeachment purposes.

IV. *Failure to modify jury instructions.*

Defendant unsuccessfully objected to two proposed jury instructions and requested that they be modified. He now contends trial court erred in these rulings.

The principles for reviewing jury instructions are well established, and will not be repeated here. *See State v. Lindsey,* 302 N.W.2d 98, 102 (Iowa 1981). We proceed to an examination of the two controverted instructions.

A. *The reasonable doubt instruction.*

■ Trial court submitted Iowa Uniform Jury Instruction No. 108, defining reasonable doubt, as its Instruction No. 4. Defendant objected to this instruction and requested the court to include the limiting words "by the State" in two places as follows:

> [I]f, after considering all of the circumstances as disclosed by the evidence [by the State], you find your mind wavering or vacillating, then you have a reasonable doubt.... If, after a careful and impartial consideration of all of the evidence in the case [by the State], you have a full and abiding conviction of the guilt

of the defendant, then you are satisfied beyond a reasonable doubt, otherwise you are not satisfied beyond a reasonable doubt.

Defendant argues this limiting language was required to inform the jury that the State had the burden of proof.

We have approved the uniform jury instruction defining reasonable doubt. In *Lindsey* we found that

> the jury was correctly instructed on the reasonable doubt standard. The trial court utilized Uniform Jury Instruction, No. 108, which had previously been approved by this court on several occasions. In addition, the trial court submitted five other instructions to the jury specifically stating that the State had the burden of proving defendant's guilt beyond a reasonable doubt. These instructions made clear what the State's burden of proof was.

302 N.W.2d at 103 (citations omitted).

Here, as in *Lindsey,* trial court submitted numerous instructions indicating the State had the burden to prove defendant's guilt beyond a reasonable doubt and defendant had no burden of proof and was under no obligation to produce evidence. Viewing the instructions as a whole, trial court did not err in refusing to modify Instruction No. 4.

B. *The credibility instruction.*

■ Defendant also objected to Instruction No. 17, which was Iowa Uniform Jury Instruction No. 105 on general credibility of witnesses. He requested trial court should instruct the jury to consider whether a witness was paid as bearing on credibility and to scrutinize testimony of paid informants because they have an interest in the outcome of the case. Trial court overruled defendant's objection and request.

Instruction No. 17 informed the jury they were "the sole judges" of the weight of the evidence and credibility of the witnesses. In addition, the instruction told the jury that in passing on the credibility of wit-

nesses they should consider the "means of knowledge of matters of which [the witnesses] speak, ... their interest or lack of interest in the result of the trial, the motives, if any, actuating them as witnesses, their ... bias or prejudice, [and] ... whether their testimony is corroborated or contradicted."

We have held " '[t]he proper practice is [for the trial court] to give a general [credibility] instruction ... applicable to all witnesses alike.' " *State v. Harrington,* 284 N.W.2d 244, 250 (Iowa 1979) (quoting *State v. Milliken,* 204 N.W.2d 594, 596–97 (Iowa 1973)). Under the general credibility instruction the jury would consider impeaching evidence in determining the weight accorded to a particular witness' testimony, even though their attention was not specifically drawn to such evidence. *Id.*

At trial, the jury's attention was drawn repeatedly to evidence of Menke's compensation as a paid police informant. Defense counsel aggressively attempted to undermine Menke's credibility by interrogating both Diamond and Menke about payments to the latter for undercover work. This effort, coupled with the court's Instruction No. 17, undoubtedly forced the jury to consider Menke's credibility in determining whether to accept or reject his testimony. We conclude trial court did not err in giving this instruction and in refusing to give the requested instruction.

## V. *Prosecutorial misconduct.*

Defendant alleges the prosecutor engaged in several instances of prejudicial misconduct; consequently, his convictions should be reversed and a new trial ordered.

 A showing of prosecutorial misconduct alone will not warrant a new trial. Defendant must show he was so prejudiced by the misconduct he was denied a fair trial. In addition, trial court has broad discretion to determine whether defendant has suffered such prejudice. On review we reverse only when trial court has abused its discretion. *State v. Chadwick,* 328 N.W.2d 913, 916 (Iowa 1983); *State v. Williams,* 315 N.W.2d 45, 55 (Iowa 1982).

Moreover, we note trial court is in the better position to determine if prejudice resulted from the prosecutor's conduct because that court observed the alleged misconduct and the jury's reaction. *Chadwick,* 328 N.W.2d at 916.

### A. *Voir dire, cross-examination, and references to other crimes.*

In this case, the prosecutor, during *voir dire,* asked if anyone knew that several other people, in addition to defendant, were arrested as a result of the undercover drug operation. Trial court promptly admonished the jury to disregard the statement, and overruled defendant's mistrial motion.

 Generally, an improper statement is not unduly prejudicial when trial court admonishes the jury to disregard it. *Williams,* 315 N.W.2d at 55–56; *see State v. Tobin,* 338 N.W.2d 879, 880 (Iowa 1983); *State v. Love,* 302 N.W.2d 115, 120 (Iowa 1981). The court's prompt admonishment at this early stage of the proceedings was sufficient to avoid any prejudice arising from the prosecutor's reference. Trial court did not abuse its discretion in overruling the motion for mistrial.

Defendant also asserts he was prejudiced by the prosecutor's cross-examination of two witnesses. In the first instance, the prosecutor asked the witness if he was aware that drugs were sold at Oscar's Lounge. Defense counsel objected because the question went beyond the direct examination. The objection was sustained.

 Essentially, defendant's claim on appeal is that the mere asking of the question provided grounds for mistrial. However, he made no motion for mistrial grounded on the question. Ordinarily, the asking of questions is not prejudicial. *State v. Gilroy,* 313 N.W.2d 513, 519 (Iowa 1981). Finally, in this instance, defendant has not demonstrated bad faith on the part of the prosecutor in asking the question. *See id.*

In the next incident, the prosecutor asked the witness if he was aware that

several drug arrests were made on August 9 at Oscar's Lounge. The witness answered and defendant failed to object or ask that the answer be struck. The prosecutor then asked if the witness would have frequented Oscar's Lounge if he knew drugs were sold there. The witness responded in the negative. Defendant then tardily objected, asserting the question went beyond the record and beyond direct examination. He made no claim he had no time to object, nor did he move to strike the answer. This record presents no error. *Oakes v. Peter Pan Bakers, Inc.*, 258 Iowa 447, 451, 138 N.W.2d 93, 96 (1965); *see Harrison v. Ulicki*, 193 N.W.2d 533, 537 (Iowa 1972).

■ Defendant finally asserts he was prejudiced by testimony regarding "arrests of other people, search warrants for establishments other than the defendant's, and other drug buys made by Tim Menke." Defendant identifies several places in the record where these alleged references were made. In only one of these places did defendant appear to object to testimony because it referred to crimes other than the ones currently charged.

In this instance, Diamond was testifying for the State when the prosecutor asked him why Menke was terminated from the operation on August 9. He responded that several search and arrest warrants had been issued and executed on August 9. Trial court overruled defendant's motion for mistrial based on the ground evidence of other people's arrests would be incompetent, irrelevant, and immaterial, and not proof of the crime charged. The prosecutor further asked why Menke was terminated as a result of those activities. Defendant objected on the same grounds and again made a motion for mistrial. Both were overruled. Diamond then answered that Menke would have become known in the community, and thus no longer could obtain useful information.

In questions asked by the prosecutor the State was attempting to demonstrate that Menke's employment with the department was not terminated for misconduct. This testimony would have been relevant in light of defendant's efforts to undermine Menke's credibility. *See* Iowa R.Evid. 401. Trial court, within its discretion, determines if the probative value is substantially outweighed by the danger of prejudice. *See* Iowa R.Evid. 403.

The district court did not abuse its discretion in overruling defendant's objection and motions for mistrial.

## B. *Comments on defendant's failure to testify.*

Defendant next asserts the prosecutor made two statements in his closing argument to the jury that constituted an indirect comment on defendant's failure to testify. The State argues defendant is asserting a different issue on appeal with regard to the prosecutor's statements, and therefore, no issue is presented for our review. *See State v. Taylor*, 336 N.W.2d 721, 725–26 (Iowa 1983). The State's argument is without merit and we proceed to address the defendant's contention.

Closing jury arguments were not reported, but a record was made in chambers after each alleged comment. The record shows the prosecutor first stated: "[Defense counsel] did not put the defendant on trial." Approximately one hour later the prosecutor stated to the jury: "[T]he defendant had the opportunity to put on evidence if he chose to." Defendant timely objected to both statements and made motions for mistrial. Trial court overruled the motions.

■ The federal constitution prohibits a prosecutor from commenting on a defendant's failure to testify in his or her own behalf. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965); *see Taylor*, 336 N.W.2d at 727. Both direct and indirect comments on the accused's silence are prohibited. *Taylor*, 336 N.W.2d at 727. To constitute reversible error, however, defendant must show (1) the prosecutor's conduct or remarks were improper, and (2) this misconduct prejudiced defendant's substantial rights causing the defendant to be deprived

of a fair trial. *United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir.1985).

To determine whether the county attorney's remarks were improper, we consider whether "'the prosecutor manifestly intended to refer to the defendant's silence, or [whether] the jury would "naturally and necessarily" interpret the statement to be a reference to the defendant's silence.'" *State v. Hutchison,* 341 N.W.2d 33, 39 (Iowa 1983) (quoting *Catches v. United States,* 582 F.2d 453, 458 (8th Cir.1978)). Further, the prosecutor's statements are not viewed in isolation, but in the context they were made. *United States v. Betancourt,* 734 F.2d 750, 758 (11th Cir.), *cert. denied,* — U.S. —, —, 105 S.Ct. 440, 574, 83 L.Ed.2d 365, 514 (1984); *United States v. Durant,* 730 F.2d 1180, 1184 (8th Cir.1984). Because trial court actually was present to hear closing arguments and observe the jury's reaction to the statements in question, we give considerable weight to trial court's recollection and rulings. *See United States v. Pimentel,* 654 F.2d 538, 543 (9th Cir.1981); *Chadwick,* 328 N.W.2d at 916.

The record reflects defendant's vigorous attack on the credibility of the State's key witnesses, Diamond and Menke. The county attorney agreed in chambers that his first alleged comment was part of his closing remarks preliminary to arguing that the defense strategy was to place the State's key witnesses "on trial" rather than the criminally accused. This was the recollection of the court, and was uncontested by defense counsel.

■ We will not find that the prosecutor manifestly intended to comment on defendant's right to remain silent when an equally plausible explanation exists for his or her statement. *United States v. Griggs,* 735 F.2d 1318, 1322 (11th Cir.1984) (per curiam). The prosecutor's statement, when viewed in the context presented here, does not demonstrate a manifest intent to comment on defendant's constitutional right to remain silent. *See Durant,* 730 F.2d at 1184; *Hutchison,* 341 N.W.2d at 39; *Taylor,* 336 N.W.2d at 727. Although the

county attorney's point might have been better phrased, the statement at issue was not intended as a comment on defendant's failure to testify.

Nor was the prosecution's first statement one the jury would "naturally and necessarily" understand as a comment on defendant's failure to testify. We are not required to ask "whether the 'jury possibly or even probably would view the challenged remark in this manner but whether the jury *necessarily* would have done so.'" *Griggs,* 735 F.2d at 1324 (quoting *Williams v. Wainwright,* 673 F.2d 1182, 1185 (11th Cir.1982) (emphasis in original)).

■ The second alleged comment defendant relies on came approximately one hour after the first statement. He asserts the prosecutor said: "[T]he defendant had the opportunity to put on evidence if he chose to." In chambers, defense counsel objected to this statement, arguing it was an improper comment on defendant's failure to take the stand because defendant could be one of the witnesses called by the defense in presenting evidence. Trial court disagreed. Defendant asked trial court to admonish the jury and also to grant a mistrial. The court refused to grant a mistrial but agreed to (and did) admonish the jury. Trial court made clear to defense counsel, however, that it did not believe such a comment had been made.

In the past we have expressed concern about prosecution arguments that focus on lack of evidence or failure to produce witnesses when the law places the burden to produce evidence on the State, not the defendant. *See State v. Nelson,* 234 N.W.2d 368, 372 (Iowa 1975). However, not all remarks relating to the evidence are forbidden. "A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as it is not phrased to call attention to the defendant's own failure to testify." *United States v. Soulard,* 730 F.2d 1292, 1306 (9th Cir. 1984); *see United States v. Singer,* 732 F.2d 631, 637 (8th Cir.1984).

In *United States v. Pimentel,* the prosecutor, during closing arguments, said, "Ladies and gentlemen [of the jury], you have a right to ask for . . . evidence." 654 F.2d at 543 n. 3. Defendant argued this statement was a comment on his failure to testify and an attempt to shift the burden of proof. The district court determined the statement was only an "attempt to underscore the significance of certain evidence compared to other evidence." *Id.* at 543. The court noted the prosecutor did not say the defendant had to produce evidence. *Id.*

The Ninth Circuit affirmed, noting it had given considerable weight to the district court's determination because that court was present to hear the remark and observe the jury. Moreover, the court of appeals found the prosecutor's remark was in response to opposing counsel's argument and strategy. *Id.* at 543–44.

Similarly, this prosecutor's statement advanced his asserted strategy to thwart defendant's effort to divert the focus to the State and to impeach the credibility of the State's witnesses. The remark did not shift the burden of proof or refer to defendant's failure to testify. The prosecutor stated the defendant had a right to put on evidence, not that he had the burden to put on evidence. *See id.* at 543. Further, the prosecutor could have been pointing to the weight of evidence produced by the State. *See Soulard,* 730 F.2d at 1306–07 & n. 14. The prosecutor's second statement is not one the jury necessarily would understand to be a comment on the defendant's failure to testify. Nor is it one that the prosecutor manifestly intended as a comment on defendant's silence.[3]

We hold the county attorney's statements in closing arguments did not violate defendant's constitutional rights.

VI. *Other issues.*

Defendant contends trial court erred in overruling his motion for mistrial based on prosecutorial misconduct when the county attorney's daughter sat in the jury box for a portion of the prosecutor's closing argument. A record was made in chambers the day after closing arguments. Defense counsel then made a motion for mistrial. Counsel indicated the prosecutor, during his final rebuttal, was making references to the need to protect "our children" from drugs while his daughter was sitting at the end of the front row in the jury box. The girl, however, did not speak to any jurors. The court noted there was no showing that anyone knew the girl was the prosecutor's daughter, and further, she could not have been in the jury box long. The court thus overruled the motion.

The State argues defendant failed to preserve error because he did not file the motion until the day after the alleged misconduct. The general rule is that a motion for mistrial must be made as soon as the grounds therefor become apparent. *State v. Gibb,* 303 N.W.2d 673, 678 (Iowa 1981).

Assuming this issue is preserved for our review, we find it to be meritless. Trial court has broad discretion in ruling on a motion for mistrial. We will intervene only when the court abuses its discretion. *See State v. Washington,* 308 N.W.2d 422, 424 (Iowa 1981). Defendant has not demonstrated trial court's decision was clearly unreasonable. There was no showing the jurors were aware of the little girl. Defense counsel did not become aware of her presence in the jury box until after court had recessed for the day. The record, made in chambers several hours after the incident, is obscure. In such a situation, trial court is in a better position to deter-

---

**3.** In chambers defense counsel asserted only that the prosecutor's statement was improper because "[o]ne of those witnesses would be the defendant." Counsel did not assert defendant was the only witness who could have contradicted the State's evidence. The purchase took place in a public bar. Others in the bar on the night of the alleged purchase could have testified in support of defendant. Thus, the prosecutor's statement is not one that the jury necessarily would understand to be a comment on defendant's failure to testify. *See Singer,* 732 F.2d at 637–38.

mine the possible prejudice, because it was present during the alleged misconduct and observed the jury's reaction. *Chadwick,* 328 N.W.2d at 916. The court did not abuse its discretion in overruling defendant's motion.

The defendant raises several other assignments of error, including the order in which the guilty and not guilty verdict forms were submitted to the jury and the sentence imposed by the trial court. We have considered these assignments and find they are without merit.

We affirm the judgment of the district court.

AFFIRMED.