# IN THE COURT OF APPEALS OF IOWA

No. 15-1893
Filed December 21, 2016

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**BRADLEY DAVISSON,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Richard G. Blane II (trial), Judge, and Carol S. Egly (motion to dismiss), District Associate Judge.

　　　A defendant appeals his conviction challenging the court's denial of his motion to dismiss and his objection based on prosecutorial misconduct. **AFFIRMED.**

　　　Jamie L. Hunter of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

　　　Thomas J. Miller, Attorney General, and Aaron Rogers, Assistant Attorney General, for appellee.

　　　Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ. Blane, S.J., takes no part.

**VOGEL, Presiding Judge.**

Bradley Davisson appeals his conviction for operating a motor vehicle without owner's consent, in violation of Iowa Code section 714.7 (2013). Davisson claims the district court erred in denying his motion to dismiss on speedy indictment grounds and in overruling his objection to a portion of the State's closing argument, which he asserts shifted the burden of proof onto him. Because the State dismissed the original complaint in furtherance of justice, the speedy indictment requirements were not violated. Further, the State's comment during closing argument regarding a lack of exculpatory evidence did not shift the burden onto Davisson. We affirm.

I.      Background Facts and Proceedings

On April 7, 2015, a truck was reported stolen in Madrid. On April 9, two Des Moines Police Department officers located a truck that matched the description of the one reported stolen and had an identical license plate number. The officers observed the driver, Davisson, exit the truck and enter a convenience store. The officers entered the store and arrested Davisson. Davisson told them he had borrowed the truck from a friend named "Nate."

On April 9, the State charged Davisson with theft in the first degree by preliminary complaint. On May 22, shortly before the speedy indictment period was set to run, the State file a notice of intent not to prosecute, which requested the theft charge be dismissed without prejudice due to "a lack of evidence to continue prosecution." The district court granted the State's motion, citing the reasons in the State's motion and Iowa Rule of Criminal Procedure 2.33(1). On June 22, the State by trial information charged Davisson with operating a vehicle

without owner's consent. On July 17, Davisson filed a pro se motion to dismiss, which was amended through counsel on July 23. Davisson's motion claimed the charge fell outside the speedy indictment period allotted by rule 2.33(2)(a). The State did not file a written resistance; however, the district court allowed the State to resist orally at the hearing on the motion to dismiss and gave Davisson an opportunity to respond in writing after the hearing. The district court found the prior dismissal was in the interest of justice and denied Davisson's motion to dismiss.

Davisson's case proceeded to a jury trial. Davisson did not testify. In the rebuttal portion of its closing argument, the State noted that, although Davisson had told the arresting officers he borrowed the car from someone named Nate, he did not call anyone by that name to testify at trial. The district court overruled Davisson's objection to this statement. On September 17, the jury convicted Davisson. Davisson appeals.

II.     Standard of Review

We review motions to dismiss a trial information for errors at law. *State v. Petersen*, 678 N.W.2d 611, 613 (Iowa 2004). We review rulings on evidentiary objections for an abuse of discretion. *State v. Sallis*, 574 N.W.2d 15, 16 (Iowa 1998).

III.    Motion to Dismiss

Davisson claims the district court erred in denying his motion to dismiss the State's trial information. Specifically, he argues the State subverted speedy indictment rules because dismissal of the theft charge was not "in furtherance of justice" and he was recharged with the same offense based on the same

incident. The State argues the dismissal was appropriate because it was based on a lack of evidence to prosecute and the State retained the opportunity to gather more evidence and refile.

Rule 2.33(1) provides:

> The court, upon its own motion or the application of the prosecuting attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner. Such a dismissal is a bar to another prosecution for the same offense if it is a simple or serious misdemeanor; but it is not a bar if the offense charged be a felony or an aggravated misdemeanor.

In explaining what grounds qualify for dismissal under rule 2.33(1), our supreme court has "said that 'furtherance of justice' under rule [2.33(1)] includes 'facilitating the State in gathering evidence, procuring witnesses, or plea bargaining.'" *State v. Fisher*, 351 N.W.2d 798, 801 (Iowa 1984) (citation omitted). The State requested dismissal based on a lack of evidence, and the district court cited that reason in granting the motion. A lack of evidence and the opportunity for further evidence-gathering is a factor our supreme court has identified as proper grounds for dismissal in furtherance of justice. *See id.* Accordingly, we find the dismissal of the theft charge without prejudice was appropriate under rule 2.33(1). Because theft in the first degree is a felony,[1] the State was not barred from refiling charges against Davisson at a later date. *See*

---

[1] Iowa Code § 714.2(1) (2013).

Iowa R. Crim. P. 2.33(1). Therefore, we affirm the district court's denial of Davisson's motion to dismiss.[2]

    IV.    Evidentiary Objection

Davisson also asserts the district court erred in overruling his objection to a portion of the State's closing argument. Davisson claims the State committed prosecutorial misconduct by improperly commenting on his decision not to present evidence to support his defense, thereby shifting the burden of proof onto him.[3] The State contends there was no misconduct.

In order to receive a new trial, a defendant must show both misconduct on the part of the prosecutor and prejudice resulted. *State v. Bishop*, 387 N.W.2d 554, 562 (Iowa 1986). While our supreme court has expressed concern about prosecution comments relating to a defendant's failure to produce evidence, such comments are generally allowed as long as they do not focus on a defendant's decision not to testify. *See id.* at 563 ("A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as it is not phrased to call attention to the defendant's own failure to testify."). Additionally, prosecution comments that are aimed at exposing a lack of evidence to support a defendant's general theory or a particular proposition are not improper. *State v.*

---

[2] Davisson also claims the State procedurally defaulted by not filing a written resistance to his motion to dismiss. We find the district court did not abuse its discretion in allowing the State to resist orally at the hearing and allowing Davisson time to submit a written response.

[3] Davisson cites the Fifth Amendment in his brief and conflates his argument regarding the shifting of the burden of proof with his decision not to testify. We do not believe the prosecutor's comments were a reference to Davisson's decision not to testify nor could they be interpreted that way by the jury. A prosecutor's remarks are improper when "the prosecutor manifestly intended to refer to the defendant's silence, or [when] the jury would 'naturally and necessarily' interpret the statement to be a reference to the defendant's silence." *State v. Hutchison*, 341 N.W.2d 33, 39 (Iowa 1983) (quoting *Catches v. United States*, 582 F.2d 453, 458 (8th Cir.1978)).

*Hanes*, 790 N.W.2d 545, 556–57 (Iowa 2010) (citing *United States v. Emmert*, 9 F.3d 699, 702–03 (8th Cir.1993) and *State v. Swartz*, 601 N.W.2d 348, 353 (Iowa 1999)).

Here, Davisson takes issue with prosecutor's statement during closing arguments referring to his claim that he borrowed the truck from a person named Nate:

> We have subpoena power and we bring people in, people that exist, to testify about this. Defense counsel also has an opportunity, if they bring forth an idea like mistake of fact, to bring people in, to subpoena people, to subpoena people like Nate. . . . It's kind of hard to subpoena someone who doesn't really exist.

Viewing this statement in the context of the trial, we do not believe the prosecutor shifted the burden of proof unto Davisson by commenting on his failure to present exculpatory evidence. The complainant testified that despite Davisson's claims at the time of his arrest, she never gave permission to anyone named Nate to drive her truck. The prosecutor's comment in his rebuttal closing argument simply noted that Davisson failed to challenge the complainant's claim by providing any evidence to the contrary. The prosecutor's comment did not call attention to Davisson's decision not to testify. *See Bishop*, 387 N.W.2d at 563. Davisson relies on some broad language in *Hanes*—"[i]t is improper for the State to shift the burden to the defense by suggesting the defense could have called additional witnesses." *Hanes*, 790 N.W.2d at 556. However, he fails to note that language was tempered in *Hanes* by the court's approval of situations where the prosecutor generally references "an absence of evidence supporting the defense's theory of the case." *Id.* at 557. We conclude the prosecutor's

comment was not improper as it did not shift the burden of proof onto Davisson, nor refer to Davisson's decision not to testify.[4]

V.      Conclusion

Because we conclude the district court did not err in denying Davisson's motion to dismiss and did not abuse its discretion in overruling Davisson's objection based on prosecutorial misconduct, we affirm.

**AFFIRMED.**

Vaitheswaran, J., concurs; McDonald, J., concurs specially.

---

[4] Even if the prosecutor's comment was improper, we find that Davisson was not prejudiced by them. *See id.* at 562. The State presented evidence that Davisson did not have permission from the car's owner to drive the vehicle and that Davisson was found in possession of the car. This evidence alone was sufficient for the jury to convict Davisson of operating a motor vehicle without owner's consent. *See* Iowa Code § 714.7 ("Any person who shall take possession or control of any railroad vehicle, or any self-propelled vehicle, aircraft, or motor boat, the property of another, without the consent of the owner of such, but without the intent to permanently deprive the owner thereof, shall be guilty of an aggravated misdemeanor.").

**MCDONALD, Judge.** (concurring specially)

I concur in the majority's resolution of Davisson's speedy trial claim. I respectfully dissent from the majority's conclusion the prosecutor did not err in commenting on Davisson's decision to not call a particular witness. However, like the majority, I conclude Davisson failed to establish the prosecutor's comments denied Davisson a fair trial. I thus concur in the judgment.

I.

The majority sets forth one of the prosecutor's comments and arguments to the jury regarding the missing witness, but there were many more, including the prosecutor's comparison of this defendant to Keyser Soze. I need not set forth all of the comments and arguments in full herein because the gist is the same. At issue is the prosecutor's argument to the jury that Davisson should have called a witness, Nate, to corroborate Davisson's statement Nate gave Davisson permission to operate the victim's vehicle. Also at issue is the prosecutor's further argument the jury could infer Nate did not exist or Nate's testimony would have been inculpatory rather than exculpatory. Davisson argues the prosecutor's comments constituted misconduct and infringed several constitutional rights, specifically improper comment on the defendant's invocation of the privilege to not testify, violation of the right to have guilt or innocence determined solely on the basis of the evidence introduced at trial, and reversal of the presumption of innocence and burden of proof on an element of the offense. *See State v. Graves*, 668 N.W.2d 860, 876 (Iowa 2003) (discussing the right to have guilt determined based on evidence introduced); *State v. Bishop*, 387 N.W.2d 554, 562–63 (Iowa 1986) (discussing the privilege against self-

incrimination); *State v. Hill*, No. 12-0860, 2013 WL 2370714, at *6 (Iowa Ct. App. May 30, 2013) (Potterfield, J., dissenting) (discussing presumption of innocence and burden of proof).

II.

"A prosecutor 'is not an advocate in the ordinary meaning of the term.'" *Graves*, 668 N.W.2d at 870 (quoting 63C Am. Jur. 2d *Prosecuting Attorneys* § 1 (1997)). The prosecutor owes a duty to do justice for the accusers and the accused. *See id.* "The prosecutor's duty to the accused is to 'assure the defendant a fair trial' by complying with 'the requirements of due process throughout the trial.'" *Id.* (quoting *DeVoss v. State*, 648 N.W.2d 56, 64 (Iowa 2002)).

To establish a due process violation, the defendant must establish prosecutorial misconduct or prosecutorial error. *See id.* at 869. "Prosecutorial misconduct includes those statements where a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct, as well as those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard." *See State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (quotations omitted). Prosecutorial error occurs "where the prosecutor exercises poor judgment and where the attorney has made a mistake based on excusable human error, despite the attorney's use of reasonable care." *Id.* (quotations omitted). "Evidence of the prosecutor's bad faith is not necessary, as a trial can be unfair to the defendant even when the prosecutor has acted in good faith." *Graves*, 668 N.W.2d at 869.

Whether the claim is one for prosecutorial misconduct or prosecutorial error, the defendant must establish the misconduct or error "resulted in prejudice to such an extent that the defendant was denied a fair trial." *Id.*; *see also Schlitter*, 881 N.W.2d at 394 (concluding the *Graves* standard applies whether the claim is prosecutorial misconduct or prosecutorial error). The prosecutor can deny the accused a fair trial in a variety of ways. *See Schlitter*, 881 N.W.2d at 393 (identifying a "range of trial conduct" constituting prosecutorial misconduct). Whatever the conduct, "it is the prejudice resulting from misconduct, not the misconduct itself, that entitles a defendant to a new trial." *State v. Piper*, 663 N.W.2d 894, 913 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010).

## A.

I first address whether the prosecutor engaged in misconduct or error. The relevant constitutional terrain has been well traversed but not well marked. The cases are in conflict, and the parties are left to perambulate with little guidance.

The State relies on two precedents for the proposition the prosecutor's argument constituted fair comment and was not improper. In *State v. Bishop*, the court stated, "A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as it is not phrased to call attention to the defendant's own failure to testify." 387 N.W.2d at 656 (quotation omitted). In *State v. Craig*, the prosecutor asked the jury why the defendant failed to have certain witnesses testify on his behalf. 490 N.W.2d 795, 797 (Iowa 1992). Citing *Bishop*, the *Craig* court concluded the argument "amounted to fair comment." *Id.*

The defendant relies on a more recent precedent, *State v. Hanes*, 790 N.W.2d 545 (Iowa 2010). In that case, the prosecutor argued the defendant should have called certain witnesses, stating "[i]f there was anything the defense really wanted from either one of these individuals that they felt was beneficial or helpful to the defendant, they could have called them." *Hanes*, 790 N.W.2d at 556. The court stated "[i]t was not proper for the State to attempt to shift the burden to the defense to call the witnesses or to suggest the jury could infer from the defense's failure to call the witnesses that they would not have said anything helpful to the defense." *Id.* at 557. *Hanes* did not attempt to reconcile its conclusion with *Bishop* or *Craig.* Indeed, the court did not cite or mention *Bishop* or *Craig.*

Subsequent cases have not reconciled the apparent conflict between *Bishop*/*Craig* and *Hanes.* *See, e.g.*, *State v. Carey*, No. 12-1423, 2014 WL 955917, at *3 (Iowa Ct. App. Mar. 12, 2014) (holding prosecutor's argument that the defendant had ability to subpoena witnesses and would have if the witnesses would have testified favorably was fair comment); *State v. Fuentes*, No. 12-1141, 2013 WL 5762878, at *2 (Iowa Ct. App. Oct. 23, 2013) (stating prosecutor may have made improper argument but preserving claim of ineffective assistance of counsel); *Hill*, 2013 WL 2370714, at *5 (holding there was no due process violation).

Because the case law has not been reconciled, the parties are left to blaze their own trails. The defendant contends *Hanes* is controlling and *Hanes* implicitly overruled the *Bishop/Craig* cases. The defendant's argument has some purchase. In a different case, the State referred "to the *Hanes* language on

burden shifting as an 'undeveloped departure' from established case law." *State v. Singh*, No. 10-1583, 2011 WL 5387279, at *5 (Iowa Ct. App. Nov. 9, 2011). To some extent, the State makes the same argument here, arguing *Hanes* is an outlier and should be ignored. The State also argues, among other things, the relevant language is *Hanes* is obiter dicta.

For the purposes of resolving this appeal, it is unnecessary to wander through the constitutional woods in search of a trail that leads to a resolution of this apparent conflict; there are non-constitutional landmarks that guide us. I begin with the underlying evidentiary question preliminary to the constitutional questions—what inference or inferences can be drawn from the failure to produce a relevant witness? In non-criminal proceedings, "[w]hen relevant evidence is within the control of a party whose interest is affected, a court may infer that the evidence, if not produced, would be unfavorable to that party." *Hamer v. Iowa Civil Rights Comm'n*, 472 N.W.2d 259, 262 (Iowa 1991). In criminal proceedings, controlling authority provides "the jury may draw an inference that the testimony of an uncalled witness would have been adverse to one of the parties. However such a rule is to be applied with caution and there must be a reason for such a supposition and a factual area within which it may logically operate." *State v. Turley*, 239 N.W.2d 544, 545 (Iowa 1976); *see also State v. Schlick*, 257 N.W.2d 59, 63 (Iowa 1977) (recognizing the jury may draw an inference the testimony of an uncalled witness would be adverse to the party who fails to call such witness); *State v. Parker*, 151 N.W.2d 505, 512–13 (Iowa 1967) (stating "[u]nder some circumstances the jury may properly draw an inference that the testimony of an uncalled witness would have been adverse to

one of the parties" but stating the rule "is to be applied with caution") (quotation omitted); *State v. Cotton*, 33 N.W.2d 880, 890 (Iowa 1948) ("Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him.") (quotation omitted). For example, an inference should not be drawn where there is some other explanation for the witness's absence. *See State v. Williams*, 155 N.W.2d 526, 530 (Iowa 1968). By way of another example, "no presumption arises when it is shown that the witness is equally available to either party or when the testimony that could be elicited from such witness would merely be cumulative." *Parker*, 151 N.W.2d at 513.

Commencing from this well-established landmark, I next address two secondary questions also preliminary to the constitutional questions—who makes the preliminary determination an inference can be drawn from the absence of a witness and how is the inference presented to the jury? In *State v. Langlet*, 283 N.W.2d 330 (Iowa 1979), the supreme court concluded the threshold determination was a question of law for the court and, if the foundation for such an inference had been laid, the court was to instruct the jury on the issue:

> As in instances of other sought-after inferences, it is the court's function to determine whether a jury could appropriately deduce from the underlying circumstances the adverse fact sought to be inferred, leaving it for the jury to say whether the inference actually ought to be drawn in the particular case. The noncalling party's explanation suffices, and the missing witness rule is properly rejected, where the trial judge is "satisfied that the circumstances thus offered would, in ordinary logic and experience, furnish a plausible reason for nonproduction."
> Where there are such reasons (for nonproduction), and they are produced and satisfy the trial judge on plausibleness, the judge

> should decline a request for a missing witness instruction, and should also forbid adverse comment to the jury on the absence of the witness.

283 N.W.2d at 335–36 (quotation and citation omitted). This is consistent with the law from other jurisdictions. For example:

> Before a party may argue an adverse inference as to an absent witness, counsel must seek permission from the court, and the court must determine (1) that the witness in question is peculiarly available to the party against whom the inference is sought, and (2) that the witness' testimony would have elucidated the transaction at issue. Argument by counsel and instructions by the trial judge regarding the inferences to be drawn as to an absent witness are prohibited if either condition is not met.
>
> In addition, this exercise of discretion must itself be based on a firm factual foundation and be exercised in an informed and rational manner if it is to withstand appellate scrutiny. The party seeking the missing witness inference must establish the two foundation conditions to the court's satisfaction. And even if the evidentiary predicates are established, the trial court still has considerable latitude to refuse to give a missing witness instruction, where it determines from all of the circumstances that the inference of unfavorable testimony is not a natural or reasonable one.

*Carr v. United States*, 531 A.2d 1010, 1012 (D.C. 1987) (quotations omitted).

The *Langlet* formulation sets forth what is commonly known as the missing-witness rule. The classic statement of the rule was set forth in *Graves v. United States*, 150 U.S. 118, 121 (1893): "The rule, even in criminal cases, is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves* referred to the rule as creating a "presumption." *Id.* Modern cases characterize the rule as authorizing only a permissive inference. *See Commonwealth v. Dorman*, 547 A.2d 757, 762–63 (Pa. Super. Ct. 1988) ("The instruction on missing witnesses is essentially a comment on the evidence; the inference itself

is the natural inference that a party's failure to call a witness in certain circumstances suggests that he was afraid to do so, which in turn suggests that the testimony would have been unfavorable.").

A majority of state and federal courts have, like Iowa, adopted some formulation of the rule. *See State v. Tahair,* 772 A.2d 1079, 1082 (Vt. 2001) ("For more than one hundred years, this Court—in conformity with most other state and federal courts—has approved a 'missing witness' instruction."); *State v. Malave*, 737 A.2d 442, 446–47 (Conn. 1999). However, some jurisdictions have moved away from the rule in criminal proceedings:

> It is one thing for this court to employ a judicial guideline in determining the sufficiency of evidence, or to say that a matter may be the legitimate subject of comment by counsel for one party or another, or to indicate that a circumstance may be considered by the trier of fact; it is quite another thing, however, for a trial court to instruct a jury that an adverse presumption arises from the failure of one or the other of the parties to a criminal proceeding to call a particular witness. We do not believe a missing-witness presumption instruction has any place in a criminal case. If its use is permitted, both the prosecution and the defense, against the risk of having the instruction granted at the request of the opposing party, would be required to call all witnesses possibly having some knowledge of the case, even though their testimony might be merely cumulative. This is not required of the prosecution, and it should not be required of the defense.
>
> Furthermore, and of special significance, use of the instruction against the defense would run head on into the presumption of innocence to which every accused is entitled and upon which juries are universally instructed. The burden is upon the prosecution to prove its case against the accused. The defense need not prove anything; it may rely upon the presumption of innocence. To tell a jury that the failure of the defense to call a material witness raises an adverse presumption against the accused is to weaken, if not neutralize, the presumption of innocence which, if given its full strength, might be sufficient to tip the scales in favor of acquittal.

*Russell v. Commonwealth*, 223 S.E.2d 877, 879 (Va. 1976); *see, e.g.*, *State v. Cobb*, 743 A.2d 1, 135 n.4 (Conn. 1999) (Berdon, J., dissenting) (collecting cases); *Malave*, 737 A.2d at 447 (abandoning rule in criminal cases); *see also Hill*, 2013 WL 2370714, at *6 (Potterfield, J., dissenting) (arguing comment regarding absent witness violated the presumption of innocence and relieves the State of its burden of proof); *Tahair*, 772 A.2d at 1085–86 (collecting cases and rejecting the rule in criminal cases). I need not consider whether Iowa should continue to adhere to or abandon the missing-witness rule in criminal cases. Neither party has briefed the issue. Further, controlling authority has adopted and applied the rule. *See Langlet*, 283 N.W.2d at 335–36; *Schlick*, 257 N.W.2d at 63; *Turley*, 239 N.W.2d at 545. This court is not at liberty to overrule supreme court precedent. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa 2014).

The contours of the rule in Iowa are not well developed. One court has set forth what appears to be a commonly accepted version of the rule:

> The missing witness rule provides that a negative inference may be drawn from the failure of a party to call a particular witness who was in his control. However, each of the following circumstances represents an exception to that rule:
> 1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;
> 2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;
> 3. The uncalled witness is equally available to both parties;
> 4. There is a satisfactory explanation as to why the party failed to call such a witness;
> 5. The witness is not available or not within the control of the party against whom the negative inference is desired; and
> 6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Dorman*, 547 A.2d at 762–63 (quotation omitted). The foregoing formulation is not an exhaustive list of the situations where a missing-witness instruction might be proper. "The propriety of such an instruction depends on the facts of each particular case." *Id.*

Applying the rule to the facts of this case, here the prosecutor did not lay the foundation to establish an adverse inference could be drawn from the witness's absence. Nor did the district court instruct the jury that such an inference could be drawn. In the absence of either, pursuant to *Langlet*, the prosecutor was prohibited from arguing an adverse inference from the witness's absence. *See* 283 N.W.2d at 335–36. Establishing the necessary foundation to allow the district court to exercise its gatekeeping function is not trivial. The adverse inference argued to the jury is essentially the creation of evidence by the absence of evidence. The fact the defendant failed to call a witness has no probative value in and of itself—the witness could not have been called for any one of a variety of reasons or for no reason at all. The fact the defendant failed to call a witness could have probative value, however, if the proper foundation were laid to establish the witness was not called under circumstances from which an adverse inference could be drawn. Where, as here, the prosecutor comments on an absent witness without laying the foundation to establish an adverse inference could be drawn—viz., the absence of the witness has probative value—the prosecutor is effectively making an argument regarding "evidence" not supported by the record. *See Arnold v. United States*, 511 A.2d 399, 415 (D.C. 1986) (stating "the courts have established these requirements to eliminate the risk that a missing witness argument may add a fictitious weight to one side

or another of the case because in a sense it creates evidence from the absence of evidence") (quotation omitted); *State v. Fowler*, 785 P.2d 808, 813 (Wash. 1990) (holding adverse inference argument without prior judicial determination was improper comment on facts not in the record). The prosecutor is forbidden from arguing evidence not in the record. *See Graves*, 668 N.W.2d at 879. Given the foregoing, I must conclude the prosecutor erred in commenting on the absence of the witness and erred in urging the jury to draw an adverse inference from the same without laying the necessary foundation and without seeking an instruction on the issue.

Given my conclusion, I need not address whether the missing witness rule is unconstitutional as applied in criminal proceedings or whether the prosecutor's comment violated constitutional principles. It should be noted, however, the Supreme Court has concluded the permissive inference instruction does not impermissibly relieve the State of its burden of proof or violate the presumption of innocence:

> The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. . . . Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.

*Cty. Court of Ulster Cty. v. Allen*, 442 U.S. 140, 157 (1979).

B.

I next address whether the prosecutor's error deprived the defendant of a fair trial. In making the determination, we look to the *Graves* factors, among other things. *See Graves*, 668 N.W.2d at 869 ("In determining prejudice the court looks at several factors within the context of the entire trial. We consider (1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct.") (quotation and citations omitted).

In looking at the totality of the circumstances, including the *Graves* factors, I am not convinced the prosecutor's comments deprived the defendant of a fair trial. The prosecutor's comments were isolated. *See State v. Greene*, 592 N.W.2d 24, 32 (Iowa 1999) ("Whether the incident was isolated or one of many is also relevant; prejudice results more readily from persistent efforts to place prejudicial evidence before the jury."); *State v. Anderson*, 448 N.W.2d 32, 34 (Iowa 1989) ("Prejudice can, but usually does not, result from isolated prosecutorial misconduct."). The prosecutor's comment was effectively rebutted by Davisson's counsel's closing statement. *See State v. Jackson*, 839 N.E.2d 362, 374 (Ohio 2006) (finding defendant failed to establish prejudice because, in part, "[d]efense counsel directly rebutted the prosecution's" statement during defendant's closing argument."). The district court properly instructed the jury on the burden of proof. *See Anderson*, 448 N.W.2d at 33–34 ("We do not overlook the prosecutor's conduct, but must also consider the whole trial, including the

court's admonition to the jury."). We assume the jurors abide by the district court's instructions. *See State v. Caringello*, 288 N.W. 80, 83 (Iowa 1939). Plus, the State's case was strong and straightforward, including testimony from the owner who unequivocally denied knowing the missing witness and the defendant and denied giving either permission to operate her motor vehicle. *See Greene*, 592 N.W.2d at 32.

## III.

For the foregoing reasons, I respectfully concur in the judgment.