STATE of Iowa, Plaintiff–Appellee,

v.

Jerry Lee HENDERSON, Defendant–Appellant.

No. 87–1354.

Court of Appeals of Iowa.

Nov. 29, 1988.

Raymond E. Rogers, Acting Chief Appellate Defender, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Bruce Kempkes, Asst. Atty. Gen., for plaintiff-appellee.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HAYDEN, Judge.

Defendant appeals from the judgment entered in the district court following his conviction for second degree theft. The defendant claims the fourth amendment prohibits the warrantless search and seizure of the garbage left for collection outside his home. We disagree and affirm the judgment of the trial court on this issue. Sentence is partially vacated.

I.

The defendant, Jerry Lee Henderson, was charged with theft in the second degree, in violation of Iowa Code sections 714.1(4) and 714.2(2). On May 20, 1986, 739 sheep skins were stolen from the Oshkosh Tannery in Boone. The defendant had worked at the tannery until 1984 and presently sold sheepskin covers for motorcycles at rallies around the country. Law enforcement officials considered Henderson a suspect. During its investigation, the sheriff's department asked the company that collects garbage for the City of Ogden, Iowa, to keep Henderson's garbage separate, transport it to the landfill, and allow the sheriff's office to examine it. The police searched the defendant's garbage in this manner on approximately eight dates between June 24th and August 19th in 1986. On two of those dates, officers discovered scraps of sheepskin in the defendant's garbage, which were later identified by an official of the Oshkosh tannery to be scraps of the sheepskins stolen from the tannery. Based in part, on the results of the trash searches, law enforcement officers obtained a search warrant for the defendant's residence. During the search they found 349 sheepskins. The trial court found 83 of the sheepskins had been stolen and had a value of $1,743. Henderson stated he bought all the sheepskins—except the 83 gray and burgundy ones—those he received in a trade with Dale McCoy. McCoy was also a former employee of Oshkosh and worked with Henderson selling sheepskins at motorcycle rallies.

The trial court found Henderson guilty of theft in the second degree. He was given a suspended sentence and placed on probation. He was also ordered to make restitution to Oshkosh for $1,743. It is from this judgment defendant now appeals.

II.

Defendant filed a motion to suppress the evidence obtained by the State in its warrantless search of his garbage on the ground the searches violated the fourth amendment of the United States Constitution and article I, section eight, of the Iowa Constitution. The trial court found defendant had no reasonable expectation of privacy in the contents of his garbage and thus refused to suppress the fruits of the search. On appeal, Henderson argues he had a reasonable expectation of privacy because he did not knowingly expose the contents of his garbage to anyone. Defendant kept his garbage in large plastic bags which were tied shut and placed in metal garbage cans. He expected the garbage to be taken to the landfill and buried. He contends the evidence seized during the warrantless searches is inadmissible because the search warrant was obtained with inadmissible evidence and evidence found through execution of the warrant should also be deemed inadmissible.

In considering the alleged violation of constitutional safeguards, we are obliged to make an independent evaluation of the totality of the circumstances shown by the entire record. *State v. Campbell*, 326 N.W.2d 350, 352 (Iowa 1982).

III.

**A. Fourth Amendment Issue.** The specific question the defendant raises on appeal is whether an investigating law enforcement official may constitutionally search defendant's garbage at a landfill after an officer asked sanitation workers to collect it routinely and keep it separate for inspection. The broader issue which determines the specific question, is whether a person has a reasonable privacy interest protected by the fourth amendment of the U.S. Constitution and article I, section 8 of

the Iowa Constitution, in garbage which has been put out for collection.

The fourth amendment of the U.S. Constitution guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized.

Article I, section 8 of the Iowa Constitution contains language nearly identical to the fourth amendment guarantee. *State v. Bishop*, 387 N.W.2d 554, 557 (Iowa 1986). Consequently, they generally are "deemed to be identical in scope, import, and purpose." *Id.* However, we note results reached by the U.S. Supreme Court in construing the federal constitution is persuasive but not binding upon this court in construing analogous provisions in our State constitution. *Bierkamp v. Rogers*, 293 N.W.2d 577, 579 (Iowa 1980).

The fourth amendment protects only against the government's intrusion upon a person's legitimate expectation of privacy. *State v. Flynn*, 360 N.W.2d 762, 764 (Iowa 1985). The correct test of legitimacy is not whether the individual has chosen to conceal some private activity, but "whether the government's intrusion infringes upon the personal and societal values protected by the fourth amendment." *Id.* at 765 (quoting *Oliver v. United States*, 466 U.S. 170, 183, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214, 227 (1984)). Recently, the U.S. Supreme Court held no reasonable expectation of privacy exists in garbage which has been left for collection. *California v. Greenwood*, — U.S. ——, 108 S.Ct. 1625, 1628–29, 100 L.Ed.2d 30, 36–37 (1988).

The facts in *Greenwood* are markedly similar to the circumstances here. A police investigator, who had received information an individual might have been engaged in criminal activity, asked the regular trash collector to pick up the plastic trash bags which the suspect had left on the curb in front of his house. The trash collector was also requested to turn those bags over to the investigator without mixing their contents with garbage from other houses. Without a warrant, the investigator searched through the contents of those bags and found items indicative of criminal activity, which he then used to obtain a warrant to search the suspect's home. Concluding that society would not accept as reasonable defendant's claim to an expectation of privacy in trash left for collection, the court stated:

> We conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to fourth amendment protection. It is common knowledge that plastic garbage bags left on or at the site of public streets are readily accessible to animals, children, scavengers, snoops and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondent's trash or permitted others, such as the police to do so. Accordingly, having deposited in their garbage in an area particularly suited for public inspection, and in the manner speaking, public consumption, for the express purpose of having strangers take it, respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded. (Citations omitted.)

*Id.*

■ We find the supreme court's rational persuasive. The defendant here also put opaque plastic bags in an area which they were customarily removed by trash collectors. The trash collectors kept the defendant's garbage separate from the others on his route and later turned it over to law enforcement officials who filtered through the contents, searching for evidence of criminal activity. The supreme court has stated any fourth amendment analysis must turn on such factors as "our societal understanding that certain areas deserve the most scrupulous protection from government invasion." *Oliver v. United States*, 466 U.S. 170, 178, 104 S.Ct. 1735,

1741, 80 L.Ed.2d 214, 224 (1984). We agree with the supreme court that "society as a whole possesses no such understanding with the regard to garbage left for collection at the side of a public street." *California v. Greenwood,* —— U.S. at ——, 108 S.Ct. at 1630, 100 L.Ed.2d at 39. We determine the use of evidence obtained by searching the defendant's garbage did not intrude upon his legitimate expectation of privacy and therefore, was properly considered by the magistrate in issuing a search warrant of the defendant's premises.

**B. Restitution.** Defendant next argues the trial court incorrectly ordered him to pay restitution pursuant to Iowa Code section 910.2 (1987). Defendant was convicted of unlawfully possessing .83 sheepskins that had been stolen from Oshkosh tannery. Those sheepskins were recovered by the police and returned to Oshkosh. Oshkosh was then made whole as to any loss it suffered as a result of defendant's criminal activities. The State did not produce preponderance evidence defendant committed the burglary at the tannery. Oshkosh did not incur any pecuniary loss or damages as a result of defendant's criminal involvement.

The State agrees under such circumstances, the district court could not order restitution for the skins taken in the burglary but not recovered.

That portion of the trial court's judgment entry requiring defendant to pay restitution is vacated.

Conviction is affirmed and sentence is partially vacated.

AFFIRMED IN PART AND VACATED IN PART.