STATE of Iowa, Plaintiff–Appellee,

v.

Andrew Dean SKOLA, Defendant–
Appellant.

No. 00–1183.

Court of Appeals of Iowa.

May 23, 2001.

Linda Del Gallo, State Appellate De-
fender, and James G. Tomka, Assistant
State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General,
Denise A. Timmins, Assistant Attorney
General, J. Patrick White, County Attor-

ney, and Linda M. Paulson, Assistant County Attorney, for appellee.

Heard by MAHAN, P.J., and MILLER and VAITHESWARAN, JJ.

MAHAN, P.J.

Andrew Skola appeals from his conviction and sentence for second-degree theft in violation of Iowa Code sections 714.1(4) and 714.2(2) (1999) and possession with intent to deliver marijuana in violation of sections 124.401(1)(d) and 124.204(4)(m). He contends (1) the trial court erred in overruling his motion to suppress, because the search warrant was not supported by probable cause, and (2) he was denied his constitutional right to effective assistance of counsel if error was not properly preserved on the first issue. We affirm.

**Background Facts and Proceedings.** In April 1999, Iowa City police Officer Douglas Hart conducted a drug investigation of Lisa and Larry Sanders, which ultimately led to their arrest. In exchange for sentencing considerations, the Sanders provided Hart with information about Andrew Skola, the defendant. Sanders told Hart that Skola "typically had about one pound of marijuana in his trailer at any time" and they had purchased marijuana from Skola in the past. The Sanders refused to participate in a controlled buy, citing safety reasons.

In July 1999, Sandy Cole, the trailer court manager, called Hart and related several problems at the trailer court related to drug activity and drug sales. A few days later, she called Hart again and told him Skola and his friends had been smoking marijuana "in between the trailers" the night before. Hart asked Cole about the day and time of garbage collection at the trailer court. Cole informed Hart garbage pickup occurred Wednesday mornings.

On Tuesday, July 13, 1999, at about 8:00 p.m., Hart drove by Skola's trailer and observed a brown plastic garbage can next to the trailer. He drove by "to see if I had to get up the next morning to go through his [Skola's] garbage." Hart wanted to go through the garbage to corroborate the information received from Cole and the Sanders, in order to obtain a search warrant for Skola's residence.

Hart returned to the trailer at 5:00 a.m. on Wednesday, July 14, 1999, and noticed the brown plastic garbage can had been moved toward the street. He pulled up to the garbage can, opened the lid, and observed three brown paper sacks. Hart took the sacks back to the police station to determine if they contained contraband or anything else to corroborate the information he had received. In one bag, Hart found two marijuana roaches, marijuana stems and seeds, and an envelope addressed to Skola. Based on this information and the information provided by the Sanders and Cole, Hart applied for and received a search warrant for Skola's home.

Evidence seized upon execution of the search warrant led to the following charges: second-degree theft, in violation of Iowa Code sections 714.1(4) and 714.2(2) (count I); possession with intent to deliver marijuana, in violation of Iowa Code sections 124.401(1)(d) and 124.204(4)(m) (count II); and failure to pay excise tax on unlawful dealing in certain substances, in violation of Iowa Code sections 453B.12, 453B.1(3)(b), 453B.3 and 124.204(4)(m) (count III).[1] Skola filed a motion to suppress, which the district court denied. After a trial on the minutes, the district court found Skola guilty as charged on counts I and II. The court sentenced Skola to an indeterminate five-year term on each

1. The drug stamp tax charge was eventually dismissed at Skola's cost.

count, to be served concurrently. The court imposed a $1000 fine and suspended Skola's license for 180 days. Skola appeals.

■ **Scope of Review.** We review constitutional claims de novo in light of the totality of the circumstances. *State v. Ortiz*, 618 N.W.2d 556, 558–59 (Iowa 2000). "Fact-findings underlying the district court's ruling on the motion to suppress are binding on us if supported by substantial evidence." *State v. Cline*, 617 N.W.2d 277, 280 (Iowa 2000) (quoting *State v. Cadotte*, 542 N.W.2d 834, 836 (Iowa 1996)).

**Motion to Suppress.** Skola argues no probable cause existed to support the search warrant issued in this case. He points to the district court's conclusion, "if the warrant relied on [Sanders and Cole] for probable cause, then the warrant would no doubt fail." Therefore, the validity of the warrant depended on the garbage evidence, which Skola argues the State obtained illegally because it did not conduct a surveillance of his garbage prior to its seizure. We assume, without deciding, the district court's conclusions regarding Sanders and Cole were correct, and the validity of the warrant depended upon whether Hart legally obtained the marijuana evidence from Skola's garbage.

■ The Fourth Amendment requires a search warrant to be supported by probable cause. U.S. Const. amends. IV, XIV, § 1; *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997). Probable cause exists if "a reasonably prudent person would believe that a crime has been committed on the premises to be searched or evidence of a crime is being concealed there." *State v. Green*, 540 N.W.2d 649, 655 (Iowa 1995). A probable cause finding must rest on "a nexus between criminal activity, the things to be seized and the place to be searched." *Id.* (quoting *State v. Weir*, 414 N.W.2d 327, 330 (Iowa 1987)). In a close case, because

of our preference for the use of warrants, we resolve doubts in favor of the warrant's validity. *State v. Gathercole*, 553 N.W.2d 569, 574 (Iowa 1996).

■ We first must address the State's contention Skola failed to preserve error by challenging the necessity of continuous surveillance of his garbage in the district court. Therefore, the State argues, he should be precluded from raising the issue on appeal. We agree.

■ When a party fails to alert the district court to its contentions, that party cannot thereafter rely on those contentions to seek a reversal on appeal. *State v. Halliburton*, 539 N.W.2d 339, 342 (Iowa 1995); *State v. Rosenstiel*, 473 N.W.2d 59, 61 (Iowa 1991). At the district court, Skola challenged the reliability of the information provided by Sanders and Cole. He challenged various aspects of the search of his garbage, but did not raise the surveillance argument he raises now. Thus, Skola is precluded from raising the issue of continuous surveillance of garbage on appeal.

■ We will address the merits of Skola's argument, however, to dispense with his ineffective assistance of counsel claim. Even if Skola properly preserved error, established case law does not require surveillance of garbage left for collection in order to render it unprotected under the Fourth Amendment. Skola's arguments are without merit.

The cases upon which Skola relies do not require the State to conduct a surveillance of garbage set out for collection before seizing it. In *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), an investigator received information indicating Greenwood might be engaged in narcotics trafficking. The investigator "sought to investigate this in-

formation by conducting a surveillance of Greenwood's home." *California v. Greenwood*, 486 U.S. 35, 37, 108 S.Ct. 1625, 1627, 100 L.Ed.2d 30, 35 (1988). The case does not indicate whether the investigator watched Greenwood place *the garbage* outside his home before asking the regular trash collector to pick up Greenwood's garbage and turn it over to her. The Supreme Court concluded:

> [R]espondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public.... [H]aving deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

*Id.* at 40–41, 108 S.Ct. at 1628–29, 100 L.Ed.2d at 36–37 (footnotes and citations omitted). The Supreme Court upheld the validity of the warrantless search and seizure of garbage left out for collection. Its decision did not rely upon the surveillance of garbage.

This court addressed the issue of warrantless search and seizure of garbage in *State v. Henderson*, 435 N.W.2d 394 (Iowa Ct.App.1988). Law enforcement suspected Henderson of theft after sheepskins were stolen from a tannery. *Id.* at 395. The sheriff's department asked the garbage collection company to keep Henderson's garbage separate, transport it to the landfill, and allow the sheriff's office to exam-ine it. *Id.* The police searched Henderson's garbage in this manner on approximately eight dates. *Id.* Based in part on the trash searches, officers obtained a search warrant for Henderson's residence, where they located the stolen sheepskins. *Id.* The court, relying on *Greenwood*, upheld the search, concluding:

> We find the Supreme Court's rationale [in *Greenwood* ] persuasive. The defendant here also put opaque plastic bags in an area which they were customarily removed by trash collectors.... The Supreme Court has stated any Fourth Amendment analysis must turn on such factors as "our societal understanding that certain areas deserve the most scrupulous protection from government invasion." We agree with the Supreme Court that "society as a whole possesses no such understanding with the regard to garbage left for collection at the side of a public street." We determine the use of evidence obtained by searching defendant's garbage did not intrude upon his legitimate expectation of privacy and therefore, was properly considered by the magistrate in issuing a search warrant of the defendant's premises.

*Id.* at 396–97 (citations omitted). The decision, like that in *Greenwood*, did not rely upon the surveillance of garbage. Skola's arguments to the contrary are without merit.[2]

Skola urges this court to establish a "surveillance" requirement under the terms of the Iowa Constitution. To support his argument, he cites cases in which other states' supreme courts have held as unconstitutional under the state constitu-

---

**2.** *See also State v. Mayes*, 666 So.2d 165, 165–66 (Fla.Ct.App.1995) (Determination of probable cause to issue a search warrant does not require continuous monitoring of garbage set out for collection).

tion an officer's warrantless search of a person's garbage.

■ Article I, section 8 of the Iowa Constitution contains language nearly identical to the Fourth Amendment guarantee of the U.S. Constitution. *Henderson*, 435 N.W.2d ·at 396. Therefore, they are generally "deemed to be identical in scope, import and purpose." *Id.* (quoting *State v. Bishop*, 387 N.W.2d 554, 557 (Iowa 1986)). Results reached by the U.S. Supreme Court in construing the federal constitution are persuasive but not binding upon this court in construing analogous provisions in our State constitution. *Id.*

■ Skola presents the court with no compelling reason to depart from the holdings in *Greenwood* and *Henderson*. The supreme courts of other states, in holding an officer's warrantless search of a person's garbage unconstitutional under the state constitution, either relied on the unique language in their constitutions to provide protection to garbage set out for

collection,[3] or decided to "respectfully part company" with the U.S. Supreme Court.[4] We refuse to depart from the explicit holding in *Henderson* that warrantless garbage searches do not violate our state constitution. Based on our precedent and the prevailing opinion of the majority of states,[5] we uphold the validity of warrantless garbage searches under article I, section 8 of the Iowa Constitution. We affirm the district court's denial of Skola's motion to suppress.

**Ineffective Assistance of Counsel.** Because we conclude Skola's "surveillance" argument is without merit, Skola's ineffective assistance of counsel claim also must fail. We need not address this issue.

**AFFIRMED.**

---

3. *See State v. Morris*, 165 Vt. 111, 680 A.2d 90 (1996); *State v. Boland*, 115 Wash.2d 571, 800 P.2d 1112 (1990).

4. *See State v. Hempele*, 120 N.J. 182, 576 A.2d 793, 799–800 (1990) ("Despite the similarity between the text of article I, paragraph 7 of the New Jersey Constitution, and the text of the Fourth Amendment, we have found on several occasions that the former 'affords our citizens greater protection against unreason-

able searches and seizures than does the Fourth Amendment.' ")

5. *See, e.g., People v. Hillman*, 834 P.2d 1271 (Colo.1992); *State v. DeFusco*, 224 Conn. 627, 620 A.2d 746 (1993); *State v. Oquist*, 327 N.W.2d 587 (Minn.1982); *State v. Trahan*, 229 Neb. 683, 428 N.W.2d 619 (1988); *State v. Carriere*, 545 N.W.2d 773 (N.D.1996).