# IN THE COURT OF APPEALS OF IOWA

No. 14-1509
Filed November 9, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**LORETTA LEAH MACKENZIE,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Scott County, Paul L. Macek (motion to suppress) and Henry W. Latham II (trial), Judges.

　　　　Loretta Mackenzie appeals from convictions for drug offenses. **AFFIRMED.**

　　　　Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

　　　　Considered by Danilson, C.J., and Mullins and Bower, JJ.

**DANILSON, Chief Judge.**

Loretta Mackenzie appeals following a jury trial from her convictions and sentences for manufacturing a controlled substance (marijuana), in violation of Iowa Code section 124.401(1)(d) (2013), failing to have a drug tax stamp, in violation of section 453B.12, and possessing drug paraphernalia, in violation of section 124.414. She contends the district court erred in denying her motion to suppress the results of a search conducted pursuant to a warrant, which she argues was premised upon the findings of an illegal trash search. Mackenzie also asserts trial counsel was ineffective in failing to argue that under the Iowa Constitution she had a reasonable expectation of privacy in the trash set out for collection. Finally she contends there is insufficient evidence to support her conviction, and in the alternative, if there is sufficient evidence she aided and abetted her husband in the manufacture of marijuana, she did so out of medical necessity.

**I. Background Facts and Proceedings.**

On June 13, 2013, Detective Dan Furlong seized the trash from outside the residence of Loretta and Benton Mackenzie on 183rd Avenue.[1] Furlong knew trash was to be picked up on that day, and at 3:30 a.m., he observed the trash can had been set out next to a street lamp on, but near the eastern edge of, the property. Furlong found marijuana stalks when he examined the trash. Based on his findings, Furlong applied for a search warrant for the property. A warrant issued.

---

[1] Detective Furlong was aware that in 2010 Benton and Loretta Mackenzie had been charged and convicted for growing marijuana.

On June 21, 2013, law enforcement officers executed the search warrant at the Mackenzie residence, where Loretta and Benton Mackenzie[2] lived with their son, Cody, and Benton's parents. Loretta and Benton lived primarily in the basement area of the house. In a recreational vehicle (RV) and a pull-behind trailer adjacent to the house, the officers discovered a marijuana growing operation, i.e., seventy-one plants in varying stages of development, lighting, timers, PVC piping, hosing, and ventilation and filtration systems. The RV and trailer were registered to the mother of a friend of Benton's, Stephen Bloomer. The RV and trailer contained no water sources.

In the basement of the Mackenzies' house, additional materials were found including marijuana, packaging from lighting elements, a container of soil, several jugs of liquid, and a number of containers of plant nutrients and soil conditioners. Also found were pipes containing marijuana residue, a digital scale, and marijuana.

Three boxes were found with labels showing they had been shipped to Loretta Mackenzie at 183rd Avenue. Also found was a receipt for "Hygrozyme" (used for hydroponic purposes) with Loretta's name and address.

During the search, Benton acknowledged to Furlong that Bloomer had brought the RV to his property so that Benton could grow marijuana inside. Benton told Furlong "all the marijuana that was growing was his and all the materials used in growing the marijuana were his." Benton denied any involvement by Loretta, Cody, or Bloomer.

---

[2] Because this case involves several Mackenzies, we will refer to each by their first name.

On July 17, the State filed a trial information charging Loretta, Benton, and Bloomer with manufacture of a controlled substance, possession of a controlled substance with intent to deliver, conspiracy to commit a nonforcible felony, and a drug tax stamp violation. The Mackenzies filed a motion to suppress, contending the warrant was based upon illegally obtained materials.

At the suppression hearing, Detective Furlong testified it was a common practice for the sheriff's department to drive through and patrol the area including 183rd Avenue. He testified 183rd Avenue was a public street and connected other roads on the north and south. Detective Furlong agreed he "pulled the trash that was next to the utility pole." He stated, "The containers were placed along the side of the road, ready for pickup." After the suppression hearing, the district court denied the motion.

Bloomer accepted a plea agreement before trial. At trial, Benton testified Bloomer had lived in the RV when it was first brought to the property in "the winter." Benton also testified that the boxes with Loretta's name on them (entered into evidence at trial) contained items ordered by Benton and paid for with his credit card. He was asked if Loretta ever opened the boxes, and he responded, "Only if they were not known what it was. She ordered things as well." Benton testified he and his family were interested in organic gardening and they had a garden on the property, which did not include marijuana plants. He stated the nutrients shown in the pictures were used for the garden. On cross-examination, Benton did not deny the marijuana plants in the RV and trailer were his.

At the close of the State's case-in-chief, Loretta's attorney made a motion:

Yes, Your Honor. Thank you. I would like to make a Motion for Directed Verdict[3] on behalf of Loretta Mackenzie. With regard to Count 1, the Manufacture of a Controlled Substance, I don't think the State has established a prima facie case with regard to any involvement she had with any grow that has been talked about as being the main issue in this case. Furthermore, with regard to the Conspiracy, I also agree that there has not been any connection with any person that ties my client into this grow operation, and because of that, because of my directed verdict request for both Conspiracy and the Manufacture, I do not believe that my client— that the State has established a prima facie case for Loretta with regards to the Drug Tax Stamp, which would be required if she was involved in the manufacture.

The court denied the motion, which was renewed following Benton's testimony and again denied.

Loretta Mackenzie was found guilty of all four counts. The conspiracy count merged with the manufacturing count, and the court imposed a five-year term of imprisonment. The court also imposed a consecutive, five-year term of imprisonment on the drug-tax-stamp violation, and a concurrent thirty-day jail sentence on the possession-of-drug-paraphernalia count.[4] The court suspended the sentences.

---

[3] Counsel referred to a motion for directed verdict. The proper terminology is a motion for judgment of acquittal. See Iowa R. Crim. P. 2.19(8).

[4] The court noted,

> [T]here is no medical necessity defense allowed relating to the use of marijuana in your husband's situation [having cancer] and you as a caregiver. But fortunately for you the legislature has not taken away my discretion in sentencing individuals for the crimes of which you have been convicted. Despite the lack of remorse you have for violating Iowa's current laws and your obvious distain for the judicial system, I will still use this discretion granted to me by the legislature through the code of Iowa to impose the appropriate sentence in this case.
>
> First, I will advise you the conviction of conspiracy merges with the actual charge of manufacturing in violation of Iowa Code section 124.401(1)(d) pursuant to the provisions of Iowa Code section 706.4. As a result you will only be sentenced on the convictions of manufacturing marijuana, drug stamp tax violation and possession of drug paraphernalia.

Mackenzie now appeals, contending the court erred in denying her motion to suppress because the search warrant was based on an illegal seizure and search of trash. Mackenzie also asserts trial counsel was ineffective in failing to argue that under the Iowa Constitution she had a reasonable expectation of privacy in the trash set out for collection. Finally she contends there is insufficient evidence to support her conviction, and in the alternative, if there is sufficient evidence she aided and abetted her husband in the manufacture of marijuana, she did so out of medical necessity.

**II. Scope and Standard of Review.**

"Because this case concerns the constitutional right to be free from unreasonable searches and seizures, our review of the district court's suppression ruling is de novo." *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011).

---

The fact is, Ms. Mackenzie, after considering all of the allowable factors, including your age, your prior record of convictions, your family circumstances, and the nature of these offenses, I am using my discretion to place you back on a period of probation and suspend the periods of incarceration at this time. Ms. Mackenzie, even though you were on probation you chose to continue to violate the laws of this state. Although you may not agree with our state's laws you cannot just chose to ignore them and continue to violate them. There are appropriate actions to take if you determine changes need to be made such as contacting your legislator. Rehabilitation would not be served by sending you to prison. It is appropriate at this time for you to remain in the community and continue to be supervised by the Seventh Judicial District Department of Correctional Services. Your probation officer can further provide you with guidance to avoid further violations of the law. But, if you violate the terms of probation as determined by this court and the department of corrections you may see yourself serving the term of incarceration I will suspend.

Ineffective-assistance-of-counsel claims are grounded in the Sixth Amendment and, therefore, our review of such claims is de novo. *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016).

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Webb*, 648 N.W.2d 72, 75 (Iowa 2002).

## III. Discussion.

*A. Motion to suppress.* "The exclusionary rule requires the suppression of evidence discovered as a result of illegal government activity." *Watts*, 801 N.W.2d at 853 (citation omitted). Loretta contends the trash search was illegal and thus the evidence discovered pursuant to the warrant must be suppressed. We disagree. In reviewing whether to suppress evidence obtained we make an independent evaluation of the totality of circumstances as shown by the entire record, including evidence presented at the suppression hearing. *State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012). We give deference to the district court's fact-findings because of the court's opportunity to assess the credibility of witnesses, but we are not bound by those findings. *Id.* In close cases, we resolve doubts in favor of the search warrant's validity. *State v. Shanahan*, 712 N.W.2d 121, 132 (Iowa 2006).

The district court wrote:

> Benton and Loretta next argue that the affiant [Detective Furlong] had to trespass on other property owners' land which was posted "private drive" or "no trespassing." This is a reference to the roadway upon which the affiant traveled to arrive at the point where he could then conduct the trash survey. This roadway is located on an easement which, Benton and Loretta contend, is private and can only be used exclusively by their guests or invitees. This argument ignores the reality that the easement that was given over the neighbor's ground and [Benton's parents'] ground was for the

purpose of a road. This road, designated 183rd Avenue, allows any person to have access to any of the residences and residents who live along the road. This, to be sure, is a private road over private property. That is to say that no governmental entity is required to maintain the road or owns either the road itself or the ground upon which it exists. Nonetheless, this road is not private in the sense that the general public is prohibited from entering on the road. There certainly was no evidence adduced by the [Mackenzies] which would suggest that the road was gated or guarded or that access to the road itself was restricted in any fashion. Indeed, 183rd Avenue serves as a connecting street between two public roads.

It is clear that trash surveys are constitutional. There is no reasonable expectation that a person's trash is private. *California v. Greenwood*, 486 U.S. 35 (1988). However, Benton and Loretta essentially argue that the fruits of this trash survey should be suppressed or should not have been included in the issuing judge's determination of probable cause, because the searched premises were posted and the trash survey was within the curtilage of the property. [Furlong] testified that the garbage cans were placed for disposal at a point on the property which was near a utility pole. This pole is near the roadway and is within approximately ten feet of the roadway. This area is within plain view of anyone driving on 183rd Avenue. It is not fenced and no one took any steps to shield the area from the public. Indeed, the utility pole is certainly within the utility and road easement. . . . From the [Mackenzies'] photographs, the trash can was over thirty feet from the garage. Clearly, this was outside of the curtilage of the premises searched. The area around the utility pole is not such an area to harbor the intimate activities associated with the domestic life and privacies of the premises searched. It is, however, a perfect spot at which one would put their trash to be collected. . . .

The [Mackenzies] also argue that the trash was to be collected by a private company, not a public entity. That is so, but clearly the trash was trash. It had been placed outside of the curtilage for anyone to go through it to search for anything they might find valuable. The trash had been abandoned. The [Mackenzies] had no expectation of privacy with respect to the contents of the garbage can placed alongside the road.

In summary, the officer made absolutely no false or reckless statements in the affidavit. The trash survey was lawful and did not violate any of the defendants' rights. The [magistrate's] finding of probable cause was correct. The motions to suppress should be and are denied.

In *California v. Greenwood*, the United States Supreme Court concluded:

> [R]espondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection.  It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. . . . [H]aving deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

486 U.S. at 40-41 (footnotes and citations omitted).  The Supreme Court thus upheld the validity of the warrantless search and seizure of garbage left out for collection.  *See also United States v. Spotted Elk*, 548 F.3d 641, 653-54 (8th Cir. 2008) ("Police may search trash left outside the curtilage of the house to be picked up by garbage collectors, because the owners of the trash have abandoned it." (citing *Greenwood*, 486 U.S. at 40-43); *United States v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992) (rejecting motion to suppress evidence of trash search "even assuming that the garbage cans were within the curtilage" and noting the focus under *Greenwood* is whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable); *United States v. Trice*, 864 F.2d 1421, 1424 (8th Cir. 1988) ("A person must do more than place trash for collection in a trash can, that the public has access to, to create an objectively reasonable expectation of privacy."); *United States v. Barker*, No. 12-268, 2013 WL 1395873, at *3 (D. Minn. Mar. 25, 2013), *report and recommendation adopted sub nom. United States v. Graham*, No. 12-268(2), 2013 WL 1395872 (D. Minn. Apr. 5, 2013) ("Even when the garbage is on a defendant's property, as opposed to the public curb, the search and seizure is permissible when the trash is in public view and easily accessible.

As long as the garbage is readily accessible to the public, the Fourth Amendment does not prohibit the search and seizure of the trash." (citing *Comeaux*, 955 F.2d at 589); *cf. United States v. Mosley*, No. CR14-3030-MWB, 2014 WL 5454575, at *20-21 (N.D. Iowa Oct. 27, 2014) (finding unconstitutional a search of an item seized from curtilage, i.e., a duffle bag dropped "immediately adjacent to the rear door of the home" in an area "partially enclosed by a fence on one side" and "effectively enclosed on two other sides by, respectively, the house and a wooded lot"). Here, the district court properly denied the motion to suppress based on the trash search.

*B. Effectiveness of trial counsel.* Loretta contends trial counsel was ineffective in failing to argue that the search was unconstitutional under our state constitution. To establish an ineffective-assistance-of-counsel claim, a defendant must prove by a preponderance of the evidence: (1) trial counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Trial counsel has no duty to raise an issue that has no merit." *State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2003).

This court has previously addressed the constitutionality of garbage searches under the Iowa Constitution, first in *State v. Henderson*, 435 N.W.2d 394 (Iowa Ct. App. 1988), and later in *State v. Skola*, 634 N.W.2d 687 (Iowa Ct. App. 2001). In both cases this court determined there is no reasonable expectation of privacy in garbage placed out for collection, and thus, the warrantless garbage searches that occurred in those cases were upheld. *Skola*, 634 N.W.2d at 691 ("Based on our precedent and the prevailing opinion of the majority of states, we uphold the validity of warrantless garbage searches under

article I, section 8 of the Iowa Constitution."); *Henderson*, 435 N.W.2d at 397 ("We determine the use of evidence obtained by searching the defendant's garbage did not intrude upon his legitimate expectation of privacy and therefore, was properly considered by the magistrate in issuing a search warrant of the defendant's premises."); *see also State v. May*, No. 13-0628, 2014 WL 1714460, at *3 (Iowa Ct. App. Apr. 30, 2014) ("When a defendant puts garbage bags in an area where they are customarily removed by trash collectors, the defendant has no legitimate expectation of privacy in the garbage."); *State v. Grant*, No. 03-1590, 2004 WL 2387055, at *2 n.2 (Iowa Ct. App. Oct. 27, 2004) ("[The defendant] had no legitimate expectation of privacy in his garbage. Therefore, the officers were free to conduct a warrantless search of the garbage left on his curb." (citation omitted)). Our supreme court has not overruled these holdings, nor intimated it may divert from them, nor has the legislature taken any action. Under these circumstances, we will not find trial counsel ineffective in failing to raise an issue contrary to the explicit holdings in *Henderson* and *Skola*.

*C. Sufficiency of the evidence.* We will uphold a verdict if it is supported by substantial evidence. *Webb*, 648 N.W.2d at 75. When a rational fact-finder is convinced by the evidence that the defendant is guilty beyond a reasonable doubt, the evidence is substantial. *Id.* at 75-76. "The evidence is reviewed in the light most favorable to the State, and all of the evidence presented at trial, not just evidence that supports the verdict, is considered." *State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004).

"To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at

trial that identifies the specific grounds raised on appeal." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). The motion for directed verdict lodge here lacked any specific grounds, and thus, the error was not preserved.

Failure of trial counsel to preserve error at trial can support an ineffective-assistance-of-counsel claim. *Id.* at 615-16. Loretta claims that the evidence shows nothing more than perhaps knowledge of her husband's manufacture of marijuana. We conclude there was substantial evidence from which the jury could determine Loretta aided and abetted Benton in manufacturing marijuana. While Benton testified Loretta did not assist him in growing marijuana, the jury was free to disbelieve him. *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."). Packages of supplies such as lighting equipment and light bulbs used in the operation were located in the family residence, and the packages were shipped to Loretta at the Mackenzie residence. We conclude there was substantial evidence for all four offenses because there was a fair inference that Loretta knew of her husband's growing operation, assisted him by ordering components used, and agreed to help him.[5] Counsel was thus not ineffective in failing to make a more specific motion for judgment of acquittal.

*D. Defense of necessity.* Finally, Loretta contends trial counsel was ineffective in failing to pursue the argument that if sufficient evidence established she aided Benton, she did so only to aid him out of his medical necessity. She

---

[5] We note the jury was instructed (in Instruction 18) that "paraphernalia" includes equipment or materials used to manufacture a controlled substance. *See* Iowa Code § 124.414(1)(a), (b).

asserts Benton was using marijuana to treat his aggressive cancer and had a doctor's endorsement that he should "continue doing what he was doing." *State v. Bonjour* is controlling here and rejected a defense of medical necessity in similar circumstances.[6]  694 N.W.2d 511, 514-15 (Iowa 2005) (stating that "[i]n view of the legislature's measured plan for studying this issue, it would be inappropriate now for us to leapfrog the legislature and the Board of Pharmacy Examiners by simply recognizing the medicinal value, and the legality, of marijuana use," noting "[i]nformed medical decisions need to be made regarding whether in fact marijuana has the claimed effects" and "how far such a defense should be extended," and concluding "[r]esolution of these issues must await further study").  We therefore affirm the convictions.

**AFFIRMED.**

---

[6] As noted by Loretta, the legislature has since recognized an affirmative defense for the use of cannabidol oil for "intractable epilepsy."  2014 Iowa Acts ch. 1125, § 7 (effective July 1, 2014).  This provides her no assistance, however.