# IN THE SUPREME COURT OF IOWA

No. 19–0283

Submitted September 15, 2021—Filed October 15, 2021

**STATE OF IOWA,**

Appellee,

vs.

**ALAN JAMES KUUTTILA,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Story County, Steven P. Van Marel (motions and trial) and James B. Malloy (sentencing), Judges.

Defendant challenges the district court's denial of his motion to suppress evidence. **AFFIRMED ON CONDITION AND REMANDED WITH DIRECTIONS.**

McDonald, J., delivered the opinion of the court, in which Appel, Oxley, and McDermott, JJ., joined. Waterman, J., filed a dissenting opinion, in which Christensen, C.J., and Mansfield, J., joined.

Martha J. Lucey, Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

**McDONALD, Justice.**

Alan Kuuttila was convicted of three misdemeanor drug offenses. In this direct appeal, Kuuttila contends the district court erred in denying his motion to suppress evidence. Kuuttila argues a sheriff's deputy violated his federal and state constitutional rights to be free from unreasonable seizures and searches when the deputy seized and searched his trash without first obtaining a warrant. Kuuttila also argues the district court erred in ordering Kuuttila to pay restitution for certain court costs and attorney fees.

In August and September of 2017, Story County Deputy Sheriff Andy Boeckman received tips Kuuttila was dealing marijuana and methamphetamine. Boeckman decided to investigate the tips and conduct warrantless trash pulls at Kuuttila's residence. Kuuttila lived in a four-plex apartment (a single family house modified into four separate apartments). Boeckman testified there were four separate trash cans in a fenced enclosure outside the apartments. The trash cans were metal and lidded. None of the cans or bags in the cans had identifying markers. Boeckman took all of the trash bags from the four cans to his office, opened them, and searched through them. He found nothing of evidentiary value. Approximately one week later, Boeckman again took all of the trash bags from the four cans to his office and searched through them. During this second search, Boeckman found one bag that contained mail addressed to Kuuttila along with "two small baggies, one with a crystal substance in it and one with a green leafy substance in it, as well as paraphernalia." One of the baggies tested positive for marijuana and one for methamphetamine.

Based on this trash pull, Boeckman obtained a search warrant for Kuuttila's residence. The subsequent search of Kuuttila's residence yielded controlled substances, including methamphetamine and prescription pills, and drug paraphernalia. Kuuttila cooperated with the officials executing the warrant and admitted the controlled substances were his.

Kuuttila was charged with three misdemeanor possession offenses, each in violation of Iowa Code section 124.401(5) (2017): possession of a cannabidiol, first offense; possession of methamphetamine; and possession of marijuana. He was also charged with possession of drug paraphernalia. Kuuttila moved to suppress evidence obtained from the warrantless trash pull, contending it violated his federal and state constitutional rights to be free from unreasonable seizures and searches as guaranteed by the Fourth Amendment to the Federal Constitution and article I, section 8 of the Iowa Constitution. Based on existing law, the district court denied the motion to suppress evidence.

Following a trial on the minutes of testimony, the district court found Kuuttila guilty of the possession offenses. The district court sentenced Kuuttila to serve fifteen days in jail with credit for five days served. As restitution, the district court assessed $192 for the cost of Kuuttila's court-appointed attorney as well as an unspecified amount for the costs of the action. At the time of sentencing, the State moved to dismiss the charge for possession of drug paraphernalia and agreed the State would pay the costs of that charge. At the sentencing hearing, the district court agreed the charge would be "dismissed

with costs assessed against the State." However, the sentencing order stated the charge was dismissed with costs assessed to the defendant.

Kuuttila timely appealed his conviction and sentence, and this court transferred the matter to the court of appeals. On appeal, Kuuttila argued the district court erred in denying his motion to suppress evidence, the portion of the sentencing order assessing costs for the dismissed charge was not in accord with the oral pronouncement of sentence, and the district court erred in ordering Kuuttila to pay restitution without first making a determination of his reasonable ability to pay. The court of appeals affirmed the district court's denial of the motion to suppress evidence. The court of appeals reasoned Kuuttila's federal and state constitutional claims were resolved by the controlling cases of *California v. Greenwood*, 486 U.S. 35 (1988), and *State v. Henderson*, 435 N.W.2d 394 (Iowa Ct. App. 1988). With respect to sentencing, the court of appeals vacated the portion of the sentencing order assessing costs for the dismissed charge and remanded the matter for entry of an order nunc pro tunc to have the judgment entry reflect the oral pronouncement of sentence. The court of appeals also vacated the restitution order and remanded the matter for further proceedings.

We granted Kuuttila's application for further review. "On further review, we have the discretion to review any issue raised on appeal." *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 255 (Iowa 2012) (quoting *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016)). With respect to the motion to suppress evidence,

we exercise our discretion to address only Kuuttila's claim arising under the state constitution. With respect to sentencing and restitution, we exercise our discretion to address only Kuuttila's challenge to restitution. The court of appeals decision is final as to all other claims and arguments.

Last term, in *State v. Wright*, 961 N.W.2d 396, 418–19 (Iowa 2021), we overruled *Henderson*, 435 N.W.2d 394. In *Wright*, we held law enforcement officers conducted an unreasonable and thus unconstitutional seizure and search in violation of article I, section 8 of the Iowa Constitution when they seized and searched garbage bags left out for collection without first obtaining a warrant. *Wright*, 961 N.W.2d at 420. Our conclusion in that case was based on the plain meaning of the article I, section 8 as informed by common law concepts of trespass. *Id.* at 404–12. We explained that "[w]ithin the meaning of article I, section 8, an officer acts unreasonably when, without a warrant, the officer physically trespasses on protected property or uses means or methods of general criminal investigation that are unlawful, tortious, or otherwise prohibited." *Id.* at 416. We held that "[o]therwise prohibited conduct includes means and methods of general criminal investigation that violate a citizen's reasonable expectation of privacy." *Id.*

We concluded a warrantless trash pull was trespassory in two respects. First, the officer engaged in means and methods of general criminal investigation that were unlawful and prohibited. *Id.* at 417. Specifically, the municipality prohibited any person, other than an authorized trash collector, from taking or collecting trash left out for collection. *Id.* Any violation of the ordinance was

punishable by a fine. *Id.* The officer was not a licensed collector and thus engaged in unlawful conduct. *Id.* Second, we explained the officer violated Wright's reasonable expectation of privacy in his trash:

> When a citizen places garbage out for collection in a closed garbage bag, the contents of the bag are private, as a factual matter. The citizen understands, however, that the contents of the bag may be revealed to someone at some point in time. That a citizen may actually lose privacy in certain things or in certain information at some point in the future does not preclude the possibility that a peace officer nonetheless violated the citizen's right to privacy in accessing the same things or information. "Privacy rights do not protect a reasonable expectation that privacy will be maintained, but rather a reasonable expectation that privacy will not be lost in certain ways."

*Id.* at 418–19 (quoting Jeffrey M. Skopek, *Untangling Privacy: Losses Versus Violations*, 105 Iowa L. Rev. 2169, 2174 (2020)). We reasoned that the officer's warrantless seizure and search of Wright's trash violated Wright's expectation that his garbage bags would be accessed only by a licensed collector under contract with the city. *See id.* at 419.

Both rationales are applicable in this case. Kuuttila resided in the City of Nevada. As in *Wright*, the Nevada municipal code prohibits any person from "[t]ak[ing] or collect[ing] any solid waste which has been placed out for collection on any premises, unless such person is an authorized solid waste collector." Nevada, Iowa, Code of Ordinances § 105.10(4) (2006). Violation of the city code is punishable by a fine of up to $500 or imprisonment for up to thirty days. *Id.* § 1.14. Boeckman was not an authorized solid waste collector, and he acted unlawfully and thus unreasonably in seizing and searching Kuuttila's trash without a warrant. *See Wright*, 961 N.W.2d at 417. In addition, Nevada's

ordinance, like similar municipal ordinances, is positive evidence of a societal expectation that trash left out shall remain private and not disturbed by anyone other than an authorized collector. Boeckman violated this expectation of privacy in seizing and searching Kuuttila's trash without a warrant. *See id.* at 419.

*Wright* was issued after the district court denied Kuuttila's motion to suppress evidence but while his appeal was pending. "Generally, when we create a new standard, we remand the case to the district court to apply the standard." *Schmidt v. State*, 909 N.W.2d 778, 799 (Iowa 2018). This applies to the case creating the standard as well as all cases pending at the time the decision is filed. *State v. Hahn*, 961 N.W.2d 370, 372 (Iowa 2021); *State v. Johnson*, 539 N.W.2d 160, 165 (Iowa 1995).

Accordingly, we conditionally affirm Kuuttila's convictions and remand this matter for further proceedings consistent with our opinion in *Wright. See State v. Veal*, 930 N.W.2d 319, 340 (Iowa 2019) (conditionally affirming conviction and remanding for further proceedings in light of new rule); *State v. Lilly*, 930 N.W.2d 293, 309 (Iowa 2019) (same). On remand, the district court shall hold a hearing on the defendant's motion to suppress evidence without consideration of the evidence and information obtained during the trash pull used to support the warrant application. *See Hahn*, 961 N.W.2d at 372. The district court shall conduct further proceedings as necessary contingent upon its ruling on the defendant's motion to suppress evidence. In the event the district court concludes the convictions and sentences should stand, the defendant must exhaust all statutory procedures to challenge the district court's

assessment of attorney fees and court costs. *See* Iowa Code §§ 910.2A, .7 (2021); *State v. Dessinger*, 958 N.W.2d 590, 606–07 (Iowa 2021).

**AFFIRMED ON CONDITION AND REMANDED WITH DIRECTIONS.**

Appel, Oxley, and McDermott, JJ., join this opinion. Waterman, J., files a dissenting opinion, in which Christensen, C.J., and Mansfield, J., join.

**WATERMAN, Justice (dissenting).**

I respectfully dissent and would affirm the district court's denial of Alan Kuuttila's motion to suppress. Under a proper reading of the Iowa Constitution, no warrant was required to search the trash placed out for collection at his four-plex. *See State v. Wright*, 961 N.W.2d 396, 429–52 (Iowa 2021) (Christensen, C.J., dissenting); *id.* at 452–58 (Waterman, J., dissenting); *id.* at 458–65 (Mansfield, J., dissenting). This case provides yet another example of the efficacy of trash rips as a law enforcement practice. Police had received multiple tips that Kuuttila was a drug dealer selling methamphetamine and marijuana. A search of his discarded trash revealed drug paraphernalia with methamphetamine residue, which in turn supported the issuance of a search warrant for his apartment where the narcotics were found resulting in his conviction for possession of methamphetamine and marijuana.

We should overrule *State v. Wright* and rejoin the clear majority of courts holding that antiscavenger ordinances don't trigger a search warrant requirement to peruse property abandoned for disposal. *See, e.g., United States v. Vahalik*, 606 F.2d 99, 101 (5th Cir. 1979) (per curiam) (holding garbage placed outside for collection did not have any Fourth Amendment protection despite an antiscavenging ordinance because the defendant did not show he "relied upon the ordinance to increase his expectation of privacy" and "[t]he purpose of the ordinance was, presumably, sanitation and cleanliness, not privacy"); *United States v. Dzialak*, 441 F.2d 212, 215 (2d Cir. 1971) ("The town ordinance simply

cannot change the fact that he 'threw (these articles) away' and thus there 'can be nothing unlawful in the Government's appropriation of such abandoned property.'" (quoting *Abel v. United States*, 362 U.S. 217, 241 (1960))); *Rikard v. State*, 123 S.W.3d 114, 120–22 (Ark. 2003) (noting that to hold constitutional rights vary depending on local ordinances "would run directly contrary to a pronouncement by this court of a uniform societal understanding relating to privacy rights in garbage"); *State v. DeFusco*, 620 A.2d 746, 752 n.17 (Conn. 1993) ("Our conclusion that the defendant had no reasonable expectation of privacy in garbage placed at the curb for collection is not undermined by the fact that the legislature has authorized municipalities to prohibit the scavenging of solid waste."); *State v. Schultz*, 388 So. 2d 1326, 1327 (Fla. Dist. Ct. App. 1980) (holding a person "who places his trash in the swale area in front of his home for collection in accordance with applicable city ordinances governing trash collection" does not maintain "a reasonable expectation of privacy in that trash"); *Ashlock v. Commonwealth*, 403 S.W.3d 79, 81 (Ky. Ct. App. 2013) (explaining that a local ordinance limiting who can remove trash from receptacles "has no bearing on the validity of the search under the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution"); *Commonwealth v. Pratt*, 555 N.E.2d 559, 567 (Mass. 1990) ("The fact that [a local] ordinance allowed only licensed trash collectors to transport garbage does not make the defendant's subjective expectation of privacy any more reasonable."); *State v. McMurray*, 860 N.W.2d 686, 693–94 (Minn. 2015) (rejecting the dissent's argument that county ordinances regulating garbage disposal strengthen an

expectation of privacy in garbage); *State v. Brown*, 484 N.E.2d 215, 218 (Ohio Ct. App. 1984) (per curiam) ("[I]t is unreasonable to suggest that the intent in passing the [antiscavenging] ordinance was to impede law enforcement authorities in the performance of otherwise lawful investigative activities."); *Commonwealth v. Minton*, 432 A.2d 212, 217 (Pa. 1981) (explaining the defendant did not have a reasonable expectation of privacy because an antiscavenging township code was for sanitation, not privacy); *State v. Stevens*, 734 N.W.2d 344, 347–48 (S.D. 2007) (holding an expectation of privacy in one's trash would be unreasonable because "[w]hile city ordinances may, in some cases, be reflective of societal expectations of privacy, they do not manifest such an expectation simply because they dictate how persons are to place their trash for collection or how the trash is to be collected").

Notably, Kuuttila never claimed he relied on the antiscavenger ordinance or was even aware of it. The ordinance was enacted to promote sanitation and hygiene, not to protect garbage from prying eyes. Indeed, there is no need for an antiscavenger ordinance to deter investigators. If the property isn't abandoned, then it is protected by laws prohibiting theft and trespass. If it is abandoned, as garbage placed out for collection surely is, then those prohibitions don't apply. In any event, Iowa cities such as Nevada are free to amend their ordinances to clarify that police may investigate possible criminal activity by searching garbage placed out for collection. And the legislature is free to enact a statute disclaiming privacy rights in such trash.

This case is also distinguishable from *Wright*, which involved a garbage can used by the defendant alone at his single-family residence. *Wright*, 961 N.W.2d at 400–01. By contrast, the trash bins used by Kuuttila were used by the occupants of all four apartments in his four-plex. Yet to today's majority, it doesn't matter whether Kuuttila's garbage cans were used by him alone, several neighbors, or hundreds of others. In my view, we should follow the great weight of authority holding that any expectation of privacy is diminished or eliminated when the trash receptacles are shared by other people in different households. *See, e.g.*, *United States v. Maestas*, 639 F.3d 1032, 1037–40 (10th Cir. 2011) (holding there is no reasonable expectation of privacy in a garbage storage area adjacent to the triplex residence); *United States v. Dunkel*, 900 F.2d 105, 107 (7th Cir. 1990) ("Someone who tosses documents into a dumpster to which hundreds of people have ready access has no legitimate expectation of privacy in the dumpster or its contents."), *vacated on other grounds*, 111 S. Ct. 747 (1991) (Mem); *United States v. Michaels*, 726 F.2d 1307, 1313 (8th Cir. 1984) ("Other tenants, guests, and visitors, perhaps curious about the contents of the trash within, could easily have rummaged through the bin. The evidence permits no other conclusion than that [the defendant] had no legitimate expectation of privacy in the contents of the garbage bags placed in the [apartment complex's communal] trash bin."); *Smith v. State*, 510 P.2d 793, 798–99 (Alaska 1973) (holding there is no objectively reasonable expectation of privacy in a dumpster in a parking area that accommodated several apartments); *People v. Harris*, 920 N.Y.S.2d 850, 852 (App. Div. 2011) ("Abandonment is a question of intent and

trash disposed of in a communal place where others can access it with the understanding that it will be removed by a third party is deemed to be abandoned."); *State v. Washington*, 518 S.E.2d 14, 16–17 (N.C. Ct. App. 1999) (holding there is no legitimate expectation of privacy in garbage placed "in a communal dumpster in the apartment complex where he resided"); *State v. Briggs*, 756 A.2d 731, 743–44 (R.I. 2000) (holding there is no reasonable expectation of privacy for trash deposited in a communal dumpster). Indeed, Kuuttila argued at one point that the State failed to show the incriminating garbage belonged to him. Accordingly, *Wright* is inapposite and not controlling in this case.

Our court stands alone in holding discarded trash is an "effect" entitled to constitutional protection. I would overrule *Wright* and affirm the district court in this case.

For these reasons, I respectfully dissent.

Christensen, C.J., and Mansfield, J., join this dissent.